847 So.2d 284 (2003)
Troy M. DAUGHTERY, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2002-CP-01428-COA.
Court of Appeals of Mississippi.
June 3, 2003.
*286 Troy M. Daughtery (pro se), attorney for appellant.
Office of the Attorney General by John R. Henry, attorney for appellee.
Before SOUTHWICK, P.J., LEE and GRIFFIS, JJ.
SOUTHWICK, P.J., for the court.
¶ 1. Troy Daughtery's petition for post-conviction collateral relief was denied. On appeal, he alleges that his guilty plea was involuntary, that his counsel was ineffective, and his sentence was in violation of statute. We do not find such errors, and therefore affirm.

FACTS
¶ 2. On June 1, 1999, Troy M. Daughtery entered a plea of guilty to the charge of capital murder. In exchange for the plea, the State agreed not to seek the death penalty. Daughtery duly executed a petition to plead guilty and, after a thorough hearing, the plea was accepted by the court.
¶ 3. Daughtery filed for post-conviction relief on May 29, 2002, claiming various errors. The circuit court found the petition without merit and denied all requested relief on July 29, 2002. Daughtery has appealed.

DISCUSSION

1. Involuntary plea
¶ 4. Daughtery first alleges that his guilty plea was involuntary because it was the product of coercion by his counsel. He claims that his counsel repeatedly threatened him that he would receive the death penalty should Daughtery decline to accept the State's plea bargain, thereby coercing him. Daughtery also alleges the plea was induced by promise of leniency.
*287 ¶ 5. By entering a guilty plea, a defendant waives certain constitutionally guaranteed protections. Specifically, a defendant waives the right to a jury trial, right to confront his accusers, and the right against compelled self-incrimination. Boykin v. Alabama, 395 U.S. 238, 242-43, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). It is the trial court's responsibility to assure that the plea is voluntary by determining whether the defendant understands the meaning and consequences of the plea. A plea induced by fear, violence, deception or improper inducements is not voluntary. URCCC 8.04(A)(3).
¶ 6. Since Daughtery complains of his counsel's advice, we note that a defense attorney has a duty to fairly, even if that means pessimistically, inform the client of the likely outcome of a trial based upon the facts of the case. If, after assessing the case, counsel believes that his client's best interest would be served by accepting a plea, he is obliged to inform the client. Polk County v. Dodson, 454 U.S. 312, 318, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981).
¶ 7. Despite this obligation, defense counsel may only urge a defendant in a particular course. Counsel may not accept a plea on the defendant's behalf. Even if Daughtery accepted the plea entirely because he was afraid of receiving the death penalty, that would not render it involuntary. North Carolina v. Alford, 400 U.S. 25, 31, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). Counsel in this case made Daughtery aware of the likelihood of success at trial. The fact that the prospects appeared grim does not constitute coercion.
¶ 8. Daughtery also complains that a promise of leniency overcame his free will. Daughtery was offered a bargain that would drop the death penalty in exchange for the plea. Guilty pleas induced by promises or assurances which go unfulfilled may be held involuntary when the defendant relies upon such promises. Mowdy v. State, 638 So.2d 738, 747 (Miss. 1994). That is not the case here. Daughtery received all benefits that he was offered under the plea bargain.

2. Ineffective assistance of counsel
¶ 9. Daughtery next claims that he was prejudiced by ineffective assistance of counsel for the following reasons: counsel failed to submit a psychiatric report to the court which may have provided an insanity defense; counsel advised him to lie about being on psychiatric medications at the plea hearing; counsel advised him he could not be convicted of anything less than capital murder at trial; and counsel incorrectly advised Daughtery that he would be eligible for parole at age sixty-five. Daughtery states that these caused him to enter a guilty plea instead of standing trial.
¶ 10. We review claims of ineffective assistance of counsel based upon a two-part inquiry: (1) whether counsel's performance was deficient; and (2) whether that deficiency caused prejudice to the defendant. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Deficient performance is evaluated by whether counsel's advice falls outside objective parameters of professional reasonableness. Id. at 687-88, 104 S.Ct. 2052. Prejudice is measured by whether the result of the proceedings would have been different but for counsel's deficiency. Cole v. State, 666 So.2d 767, 775 (Miss.1995).
¶ 11. The psychiatric report to which Daughtery refers is included in the record. At his own request, Daughtery was evaluated by a clinical and forensic psychologist. The report states that Daughtery has certain cognitive and affective abnormalities. It does not state that Daughtery was unable to appreciate the *288 quality and nature of his criminal act at the time he committed it, or that he was aware of those things but unable to appreciate that the act was wrong. This is the M'Naghton test of insanity as a legal defense to criminal prosecution, the test used in this state. Laney v. State, 486 So.2d 1242, 1245 (Miss.1986). Lacking any suggestion of legal insanity in this professional evaluation, counsel cannot be faulted for declining to pursue an insanity defense.
¶ 12. The report was mentioned to the trial court by defense counsel at the plea hearing. Counsel stated that "no question has ever been raised as a result of that concerning his competency ... in preparing for trial," which we find to be an accurate characterization. The court was made aware of the relevance of the report to the plea, and no ineffectiveness of counsel is displayed by this.
¶ 13. In support of his contention that counsel told him to lie about being on psychiatric medication, Daughtery submits the sworn joint affidavit of his mother and sister-in-law, both of whom were present at a meeting with counsel and the defendant prior to the plea hearing. Both women swear that Daughtery told his attorney that he was taking anti-depressant and anti-anxiety medication as well as seeing a counselor relating to the recent death of his father. Counsel then allegedly told Daughtery to state that he had not taken medication or seen a counselor for several months, otherwise the judge would reject the plea. They also swear that counsel told Daughtery he must say that he was satisfied with the deal offered him and that he had not been promised anything in return for accepting the plea otherwise the judge would reject the plea.
¶ 14. Daughtery does not claim the medications clouded his judgment or ability to enter a voluntary guilty plea, only that counsel urged him not to admit to the medication or recent counseling. Taking as true Daughtery's statements as well as those contained in the supporting affidavit, Daughtery may be able to meet the first prong of the Strickland test but fails to demonstrate the second. He provides no evidence that, but for this possibly false statement to the court, the proceedings would have ended differently. If Daughtery was competent at the time of the hearing, the trial court would have had no reason to reject the plea because of medication. At the hearing, after the defendant stated that he was no longer taking medication, the trial judge asked additional questions about his mental condition that are not attacked as having been false. He described one of the medications that he had been taking. It was medication for anxiety. He informed the trial judge that he had not recently had any anxiety attacks, which is not disputed in this present appeal. The post-conviction affidavit also alleges that he was taking Prozac, which is taken for depression, and that was not mentioned at the plea hearing as being a former medication.
¶ 15. There is no evidence from the plea transcript, the post-conviction affidavit, nor the psychiatric examination, that Daughtery was, because of his allegedly continuing use of anti-anxiety and anti-depression medication, unable to make an intelligent, knowing, and voluntary plea. If anything, the medication and counseling would haveif the post-conviction affidavit is accurateonly benefitted Daughtery's mental state. We find no basis to believe that the trial court would have rejected the plea had the medication and counseling been admitted. The issue was Daughtery's then-current competence. The alleged falsehoods did not affect that determination.
¶ 16. Similarly, Daughtery cannot show prejudice from his argument *289 that counsel advised him that he could not be convicted of a lesser charge than capital murder if he went to trial. A lesser-included offense instruction is not to be given when, taking the evidence in the light most favorable to the defendant, no reasonable juror could find the defendant guilty of a lesser-included offense. Ballenger v. State, 667 So.2d 1242, 1255 (Miss. 1995).
¶ 17. The record reveals no facts that would have likely been a basis for a lesser-included offense instruction. Daughtery has never denied that he planned and began the execution of a home robbery, or that the homeowner, an elderly man, was found strangled with an electrical cord. While claiming no memory of events following his arrival at the home of the victim, Daughtery does not deny that he was found in possession of property and cash belonging to the victim. The State was also prepared to offer the statement of another man who would testify that Daughtery called him after the robbery and offered cash in return for assistance in disposing of the body. We cannot find that had his counsel given the advice that is now asserted it would have been an unreasonable and constitutionally infirm analysis of the prospects that Daughtery would face at trial.
¶ 18. The final claim under this assignment of error is that counsel told Daughtery he would be eligible for conditional release parole at age sixty-five, that this advice was wrong and because he relied upon this representation in accepting the plea bargain, Daughtery was prejudiced by counsel's incorrect advice. Daughtery asserts that he was unaware he would not be eligible for parole ever until after arriving at prison and had he known earlier, he would not have accepted the plea at all.
¶ 19. The plea petition that Daughtery signed prior to the plea hearing stated that the sentence the State would recommend was life without parole. The trial court told Daughtery that he would be sentenced to life without parole, and the defendant stated that he understood that fact. The post-conviction affidavit from Daughtery's mother and sister-in-law states that counsel told Daughtery that he would get a sentence of life without parole. We find that these sworn statements cannot be overcome by Daughtery's post-conviction assertions of what his counsel allegedly told him.
¶ 20. We also note that the claim is not that his counsel promised the accused would be eligible for parole when he reached the age of sixty-five. He alleges counsel advised him that "according to the new law effective July 1, 1995, he would be able to petition the sentencing court at age sixty-five for a conditional release, and not to look that far off because the law was surely to change being that the prison system was way overcrowded."
¶ 21. Finally, even had these statements been made, any misconception was later corrected by the trial court. Where the court correctly explains the potential penalty at a plea hearing, any harm resulting from prior erroneous advice is ameliorated and the error can no longer afford the petitioner post-conviction relief. Roland v. State, 666 So.2d 747, 750 (Miss. 1995).

3. Sentence imposed without jury impanelment
¶ 22. Daughtery next claims that his sentence is invalid because the court exceeded its authority. A statute provides for impanelment of a jury to pass sentence upon a defendant when the possible punishments are death, life imprisonment or *290 life imprisonment without parole. Miss. Code Ann. § 99-19-101(1) (Rev.2000).
¶ 23. Daughtery's sentence was life imprisonment. He was ineligible for parole. Miss.Code Ann. § 47-7-3(1)(f) (Rev.2000). Only a jury may impose a death penalty. Edwards v. State, 737 So.2d 275, 290 (Miss.1999). By entering a guilty plea to a charge of capital murder, the only sentence Daughtery could receive from the judge was life without possibility of parole. It is appropriate for the trial court to impose the only possible sentence without impaneling a jury for the sake of procedural form. Pham v. State, 716 So.2d 1100, 1104 (Miss.1998).

4. Admission of guilty
¶ 24. Finally, Daughtery argues the trial court was without authority to impose sentence on him because he did not admit to any guilt. A statute provides that a person indicted for a criminal offense shall not be convicted unless by confession of his guilt in open court or by admitting the truth of the charge against him by his plea. Miss.Code Ann. § 99-19-3 (Rev.2000).
¶ 25. At Daughtery's plea hearing, the prosecutor gave a detailed summary of what the State could prove. It covered all the elements of the charged offense. The trial judge stated that he was going to ask Daughtery whether he "wished to enter a plea of guilty to those facts [that the prosecutor] has stipulated into the record?" Before an answer was given, defense counsel interrupted the judge and asked to approach the bench. The judge agreed for him to do that, but it is not clear from the transcript whether any conference occurred. The next matter in the transcript is the judge's asking Daughtery how he wished to plead to the charge of capital murder. The answer was "Guilty." We find that this was an admission of the truth of the charge made against him, the facts of which had just been summarized by the prosecutor. That was sufficient.
¶ 26. THE JUDGMENT OF THE HARRISON COUNTY CIRCUIT COURT DENYING THE PETITION FOR POST-CONVICTION RELIEF IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO HARRISON COUNTY.
McMILLIN, C.J., KING, P.J., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER and GRIFFIS, JJ., CONCUR.