BARNES, J., for the Court.
¶ 1. Christopher Elliott appeals the Circuit Court of Marion County’s dismissal of his motion for post-conviction relief. Finding no error, we affirm.
STATEMENT OF FACTS AND PROCEDURAL HISTORY
¶ 2. On August 10, 2004, Elliott pleaded guilty in the Marion County Circuit Court to the crime of sexual battery. On September 3, 2004, the circuit court sentenced him to twenty years in the custody of the Mississippi Department of Corrections.
¶ 3. The crime relates to an incident that occurred on January 19, 2003. Elliott claims he had known the victim since high school and had had consensual sex with her. He stated she invited him into her home, and while high on marijuana and methamphetamine, engaged in oral sex with him while he was on the telephone with another woman whom he was also planning to see that evening. He claims the victim bit his penis in jealousy, whereupon he nearly blacked out, hit her in self-defense, and fled the premises. Later that evening, the victim was treated at a local hospital’s emergency room for minor injuries sustained during the incident.
¶ 4. On September 4, 2007, Elliott filed a motion for post-conviction relief in circuit court, claiming that his guilty plea was invalid and that he had received ineffective assistance of counsel. Therefore, he contended his plea must be set aside and a jury trial granted. He attached affidavits to his motion from himself and his aunt, Martha Miller. In his affidavit, Elliott denied committing sexual battery and related his lawyer’s alleged deficiencies. Regarding his plea, he claimed it was invalid because his court-appointed attorney told him he would only receive a suspended sentence and “would not have to go to jail.... [he] could go home that day.” Also, Elliott explained he was involved in an automobile accident in October 2003; therefore, he had been prescribed, and was taking, Lorcet, Soma, and Zanax at the time of the plea hearing, which caused him confusion and memory impairment. Also, Elliott claimed he had no knowledge when he pleaded guilty that he would be required to register as a sex offender pursuant to Mississippi Code Annotated section 46-33-39(1) (Rev.2004). Miller’s affidavit only claimed Elliott told her he was assured by his attorney he would only receive a suspended sentence if he pleaded guilty, and that he told her he was not guilty.
¶ 5. On March 26, 2008, the circuit court dismissed Elliott’s motion as untimely filed because it was filed one day after expiration of the three-year statute of limitations. Alternatively, the circuit court denied the motion on the merits. On April 7, 2008, Elliott filed a motion to reconsider, claiming that his post-conviction relief motion was not time-barred as the motion was filed the day after Labor Day, a legal holiday.[1] Although Elliott’s motion to reconsider was filed beyond ten days from the entry of judgment required by Mississippi Rule of Civil Procedure 59, Elliott argued preemptively that his motion to reconsider was not untimely because, as of April 2, 2008, Elliott had not received the *704 order of dismissal by mail.[2]
¶ 6. On April 18, 2008, the circuit court entered an “Amended Order of Dismissal.” The court did not specifically state Elliott’s motion to reconsider was time-barred and deleted the portion of the opinion pertaining to the motion for post-conviction reliefs untimeliness. Making no substantive changes to its initial order, the circuit court again found no merit to Elliott’s claims.[3] On May 9, 2008, Elliott appealed the amended order’s dismissal, making the same arguments as raised in his initial motion for post-conviction relief. He also claims the circuit court erred in denying him an evidentiary hearing.
STANDARD OF REVIEW
¶ 7. The trial court’s dismissal of a motion for post-conviction relief will not be disturbed unless the decision is clearly erroneous. Williams v. State, 872 So.2d 711, 712(¶2) (Miss.Ct.App.2004). Questions of law are reviewed de novo. Id.
ANALYSIS OF THE ISSUES
1. Jurisdiction
¶ 8. We note that Elliott’s motion to reconsider, filed April 7, 2008, was not filed within ten days of the circuit court’s entry of judgment on March 26, 2008, as required by Mississippi Rule of Civil Procedure 59(e). Elliott represented to the circuit court that he had not received the order of dismissal until April 2, when he contacted the clerk’s office. The comment to Rule 59, however, expressly states that “the court is not permitted to extend” the time for filing a motion to alter or amend judgment. M.R.C.P. 59 cmt. Accordingly, it is questionable whether the circuit court had authority to enter an amended order more than ten days after the order of judgment.[4] See Knight v. State, 959 So.2d 598, 603(¶ 12) (Miss.Ct.App.2007) (when a judge seeks to alter or amend the judgment sua sponte, he is also bound by the ten-day period of Rule 59(e), and failure to meet this requirement voids the amended judgment). Elliott filed his notice of appeal on May 9, 2008, within thirty days of the amended order of dismissal, but not of the original order.
¶ 9. Whether Elliott’s motion to reconsider was timely filed and whether the amended order was valid relates to the possible untimeliness of Elliott’s notice of appeal and, thus, this Court’s jurisdiction. The notice of appeal must be “filed with the clerk of the trial court within 30 days of the entry of the judgment or order appealed from.” M.R.A.P. 4(a). The appeal shall be dismissed unless the notice is timely filed pursuant to Mississippi Rule of Appellate Procedure 4 or 5. M.R.A.P. 2(a)(1). However, an appeal of post-conviction relief petitions are governed by Mississippi Rule of Appellate Procedure 2(c), which allows this Court to suspend the requirements of the appellate rules in the interest of justice. Accordingly, this Court may suspend Rule 4(a) to allow an out-of-time appeal in criminal cases and “civil” actions for post-conviction relief. See M.R.A.P. 4 cmt. To the extent Elliott’s notice of appeal may not be timely filed, we suspend the requirements of Rule *705 4(a) under the unique circumstances of this case and proceed to the merits of Elliott’s appeal.
2. Elliott’s Guilty Plea

a. Voluntary and Intelligent

¶ 10. Elliott argues that his plea was not voluntary or intelligent. First, he contends he was “induced by deception” by his attorney at the time, who promised that if Elliott pleaded guilty, he would only receive a suspended sentence. Second, Elliott claims he was under the influence of prescribed pain medications, which caused him confusion during the plea hearing. Elliott attached two affidavits-one from himself and one from Miller, as proof of his claims.
¶ 11. A plea of guilty is only binding if it is entered voluntarily and intelligently. Myers v. State, 583 So.2d 174, 177 (Miss.1991). In order to determine whether a plea is voluntary, the appellate court examines whether “the defendant knows what the elements are of the charge against him including an understanding of the charge and its relation to him, what effect the plea will have, and what the possible sentence might be because of his plea.” Wilson v. State, 577 So.2d 394, 397 (Miss.1991). Further, “[s]olemn declarations in open court carry a strong presumption of verity.” Baker v. State, 358 So.2d 401, 403 (Miss.1978) (quoting Blackledge v. Allison, 431 U.S. 63, 74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977)).
¶ 12. The transcript of Elliott’s plea hearing contains the following colloquy, made under oath:
The Court: Now Christopher, what happened that got you indicted for sexual battery?
Elliott: I was talking on the phone, fixing to leave and she started, you know, she started messing with me. And the next thing I know she bit me and I blanked out and I hit her.
The Court: All right. Now, let me ask you think, Christopher: I presume she’s going to come over here and testify you forced her to allow you to insert your penis in her mouth and she didn’t want to do that. Is that the truth?
Elliott: Not according to me it’s not.
The Court: All right. Well, you understand that’s what trials are all about?
Elliott: Yes, sir. I reckon I’d say that’s the truth, yeah.
The Court: Huh?
Elliott: I’m going to say that’s the truth.
The Court: Well, I don’t want you just saying something. Now, is it the truth?
Elliott: No, sir. It’s not the truth, but—
The Court: All right. Do you want to go on to trial on this?
Elliott: Well, I was advised to go ahead and plead guilty to it.
The Court: Well, I understand that, Christopher, but I mean though I don’t want you pleading guilty unless you’re satisfied that if we went to trial the jury would most likely believe her because, you know, you don’t have to testify. That’s your decision. You can testify if you wanted to. ’ And what’s going to happen is she’s going to get up here and testify, I presume that whatever happened between the two of you she wasn’t willfully engaging in that activity. And then you forced it on her. And then the jury has got to determine who they believe. If they believe that she’s lying they are going to find you not guilty. It’s going to take twelve of them.
*706 So do you agree that her version of this is the one that would be most believable by the jury?
Elliott: Yes, sir, I do.
The Court: ... And I presume that, Christopher, this is one of those where just two people were present and it’s one against the other, but do you believe that if the State’s evidence is believed the State would have enough proof to prove each of these cases beyond a reasonable doubt?
Elliott: I do, Your Honor.
The Court: And, [Ms. Barnes, Prosecutor], do you need to add anything to the record on Christopher’s situation ....
Ms. Barnes: Your Honor, I would just add that on the night in question Mr. Elliott stopped by [the victim’s] house and she did let him in and allow him to use the telephone, which he did do. Her testimony would then be that he forced her to perform oral sex on him, that she did bite him and got away from him, ran to the back bedroom where her child was sleeping, locked herself in the bedroom and called 911. When the police arrived on the scene they found one of Mr. Elliott’s shoes out in the yard where he had fled the scene and left it there. And, also, a knife was found on the property that had come from Mr. Elliott’s person.
The plea hearing transcript also shows Elliott was fully advised by the circuit court judge of his charge, the effect of the plea on his rights, and the possible sentence. Elliott agreed with the judge that no one had informed him he would receive a particular sentence, coerced him, made promises to him, and that his guilty plea was freely and voluntarily entered. Furthermore, Elliott signed a petition to enter a guilty plea to the same effect.
¶ 13. While Elliott contends that his attorney advised him he would only receive a suspended sentence for the charge, the circuit court judge specifically told Elliott:
There won’t be any recommendations as to sentences. The District Attorney’s [0]ffice won’t make any recommendations, law enforcement won’t and your attorneys won’t. But I’m going to sit down with all the material ... the pre-sentence, victim impact ... the hearing today and your petition, arrive at what I believe is a fair sentence and that’s the sentence ... you will serve. Now, has anybody told ... [you] if you will plead guilty you are going to receive a particular sentence, length of sentence or anything like that?
Elliott responded, “no.” Elliott was told by the circuit court judge that he could be sentenced to the maximum term of thirty years in prison, and Elliott confirmed that he understood. Accordingly, the record does not indicate Elliott was deceived or coerced by his attorney to plead guilty, as his affidavit states.
¶ 14. Regarding Elliott’s contention that he was under prescription pain medicine at the hearing and, therefore, confused about his plea, Elliott did tell the judge he was on medication, but he stated that it did not impair his comprehension:
Elliott: I’m taking pain pills.
The Court: Now, are you taking them as prescribed?
Elliott: Yes, sir.
The Court: Do they affect you mentally to where you don’t understand?
Elliott: No, sir.
The Court: So you’re fully understanding what we’re going through, what I’ve asked you and you understand that?
Elliott: Yes, sir.
*707 Elliott’s signed plea petition also denies he was “under the influence of any drugs or intoxicants” when he pleaded guilty. Therefore, the record reflects that while Elliott was indeed on pain medication at the time of his plea colloquy, he convinced the circuit court judge that it did not impair his comprehension. We And no merit to Elliott’s belated claim of impairment.

b. Sex Offender Registration

¶ 15. Elliott also claims that his guilty plea could not be voluntary and intelligent because he was not informed he would have to register as a sex offender. Elliott insists he would not have pleaded guilty had he known of this requirement. Also, he argues his plea did not conform to the mandates of Mississippi Code Annotated section 45-33-39(1); thus, his due process rights were violated. Section 45-33-39(1) provides, in pertinent part, that:
The court shall provide written notification to any defendant charged with a sex offense as defined by this chapter of the registration requirements.... Such notice shall be included on any guilty plea forms and judgment and sentence forms provided to the defendant. The court shall obtain a written acknowledgment of receipt on each occasion.
¶ 16. Elliott is correct that the record is silent pertaining to the court’s giving him notice of the sex offender registration requirements and his receipt of such. He is also correct in noting that, while he did raise this issue in his original motion for post-conviction relief, neither the initial nor the amended trial court orders addressed this issue. However, we find Elliott’s argument without merit.
¶ 17. Both this Court and the Mississippi Supreme Court recently addressed this issue in Magyar v. State, 18 So.3d 851 (Miss.Ct.App.2008), aff'd, 2007-CT-00740-SCT (Miss. August 13, 2009). This Court originally affirmed the denial of John Magyar’s motion for post-conviction relief, finding that advising the defendant of the sex offender registration requirement was a collateral consequence to pleading guilty. Magyar, at (¶ 11). The supreme court found no error in this regard, but “granted certiorari to address the statutory mandate that trial judges inform criminal defendants-prior to accepting their guilty pleas-of the requirement to register as a sex offender.” Magyar, at (¶ 4). The supreme court explained that legislation mandating what our trial judges must say to a defendant in a courtroom during a plea hearing is “tantamount to ... approval of legislative usurpation of judicial prerogative.” Id. at (¶ 8). The supreme court concluded that “[sjection 45-33-39(1) confers no right on a criminal defendant charged with a sex crime and imposes no duty on our trial judges” because of the distinction between legislation and judicial duty. Id. The supreme court also found, as we had, that the requirement to register as a sex offender under this statute is not a direct or material consequence of a guilty plea but a collateral consequence, and as such, “the trial court will not be put in error for failing to advise” the defendant of the registration requirement before accepting his guilty plea. Id. at (¶ 11).
¶ 18. Elliott notes that this Court handed down its decision in Magyar after his motion for post-conviction relief was filed, and we note that the supreme court handed down its opinion after Elliott filed his brief with this Court. In his appellate brief, Elliott attempts to distinguish Magyar factually from the case at bar. He states that in Magyar this Court found the requirements of section 45-33-39(1) were met because Magyar’s sentencing order contained the notice, and in the case at bar, Elliott was given no notice at all. However, since the supreme court pronounced in Magyar that no error will be *708 found in the trial court’s failing to advise the defendant of sex offender registration, we find this argument without merit.
¶ 19. Thus, we conclude the circuit court did not err in finding that Elliott entered a voluntary and intelligent guilty plea.
3. Ineffective Assistance of Counsel
¶ 20. Elliott contends that he received ineffective assistance of counsel in pleading guilty because his attorney did not discuss the merits of the case with him, did not independently investigate the crime, and did not bring forward possible mitigating and exculpatory evidence during the plea hearing.
¶ 21. To prove ineffective assistance of counsel, the defendant must show that counsel’s performance was deficient and this deficiency prejudiced his defense. Liddell v. State, 7 So.3d 217, 219(¶6) (Miss.2009) (quoting Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). There is a strong but rebuttable presumption that trial counsel was competent. Id. at 219-20(¶ 6) (quoting Bennett v. State, 990 So.2d 155, 158(¶ 9) (Miss.2008)). In the context of a guilty plea, “when a convicted defendant challenges his guilty plea on grounds of ineffective assistance of counsel, he must show unprofessional errors of substantial gravity. Beyond that, he must show that those errors proximately resulted in his guilty plea and that but for counsel’s errors he would not have entered the plea.” Buck v. State, 838 So.2d 256, 260(¶ 12) (Miss.2003) (quoting Reynolds v. State, 521 So.2d 914, 918 (Miss.1988)).
¶ 22. Elliott enumerated many of the alleged deficiencies of his trial counsel in his affidavit attached to his motion for post-conviction relief. Specifically, he claims that his counsel never discussed the merits of his case with him or showed him any discovery. He states his counsel did not know that Elliott and the victim had had consensual sex in the past or that at the time of the incident she was high on marijuana and methamphetamine. Elliott criticizes his attorney for not interviewing the victim more fully and discovering she had two justice court “driving under the influence” charges, which would cast doubt on her credibility and serve as mitigating evidence at sentencing. However, we fail to see how any of these bare allegations further Elliott’s case.
¶ 23. Elliott’s testimony at the plea hearing contradicts his contentions. He stated under oath that he had met with, conferred, and discussed his case thoroughly with his attorney. Elliott affirmed that he was “totally satisfied” with his counsel’s legal representation. Moreover, Elliott has not presented any specific evidence that, but for his counsel’s alleged deficiencies, he would not have pleaded guilty. Instead, he supports his contentions of deficient counsel with mere assertions in the form of his own affidavit. Elliott has failed to show how such alleged deficiencies would have made him go to trial.
¶ 24. Elliott’s contention that had he known about the sex offender registration requirement, he would not have pleaded guilty, is also without merit. As previously stated, this Court, in Magyar, at (¶¶ 10-11) held that advising a defendant of the sex offender registration requirement was a collateral consequence of his guilty plea, and Magyar’s sentencing order was sufficient to comply with section 45-33-39(1). We also held that it did not constitute ineffective assistance of counsel for failure to advise the defendant of the registration requirement. Id. at (¶21). The Mississippi Supreme Court affirmed our ruling that sex offender reg *709 istration is a collateral consequence of a guilty plea. Magyar, at (¶ 11). Elliott attempts to distinguish Magyar regarding ineffective assistance because, unlike Magyar, the notice of the sex offender registration requirement was not in his sentencing order. Also, Elliott states in his affidavit he would have gone to trial had he known of the requirement, so his counsel’s failure to tell him of the requirement was ineffective assistance. While these are distinguishable factors, the pivotal holding of Magyar was that the requirement to register as a sex offender is a collateral consequence of a guilty plea. Magyar, at (¶ 11), ajfd, 2007-CT-00740-SCT (¶ 11). The United States Court of Appeals for the Fifth Circuit has stated that counsel’s failure to inform the defendant of the collateral consequences of a guilty plea is never grounds for ineffective assistance of counsel under Strickland; “defense counsel has done all he must under the Constitution when he advises his client of the direct consequences of a guilty plea.” Santos-Sanchez v. United States, 548 F.3d 327, 334 (5th Cir.2008) (quoting United States v. Banda, 1 F.3d 354, 356 (5th Cir.1993)). Accordingly, the circuit court properly found no merit to Elliott’s claim of ineffective assistance of counsel.
4. Evidentiary Hearing
¶ 25. Elliott contends that the circuit court erred in denying his request for an evidentiary hearing. We find no such error. “The trial court has ‘considerable discretion’ in determining whether to grant an evidentiary hearing.” Meeks v. State, 781 So.2d 109, 114(¶ 14) (Miss.2001) (citing Smith v. State, 646 So.2d 538, 544 (Miss.1994)). “Not every motion for post-conviction relief must be afforded a full adversarial hearing by the trial court. The movant must demonstrate, through affidavits or otherwise, the potential existence of facts that, if proven at the hearing, would entitle the movant to relief.” Jones v. State, 795 So.2d 589, 590(¶3) (Miss.Ct.App.2001) (citing Potts v. State, 755 So.2d 1196, 1198(115) (Miss.Ct.App. 1999)). Elliott makes no such showing. Further, a trial judge may disregard the movant’s assertions when the record substantially contradicts them, as it does here. Hebert v. State, 864 So.2d 1041, 1045(¶ 11) (Miss.Ct.App.2004) (citing White v. State, 818 So.2d 369, 371(114) (Miss.Ct.App. 2002)). Therefore, we find no error in the circuit court’s denial of an evidentiary hearing.
CONCLUSION
¶ 26. For the above reasons, we find the circuit court properly dismissed Elliott’s motion for post-conviction relief.
¶ 27. THE JUDGMENT OF THE CIRCUIT COURT OF MARION COUNTY DISMISSING THE MOTION FOR POST-CONVICTION RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, ISHEE, CARLTON AND MAXWELL, JJ., CONCUR. ROBERTS, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY LEE, P.J., AND GRIFFIS, J.

. Mississippi Rule of Civil Procedure 6(a) provides that if the last day of a time period presented by the rules, or an appellate statute, is a Saturday, a Sunday, or a legal holiday, the period runs until the end of the next day which is not a Saturday, Sunday, or a legal holiday.

. Fortuitously, Elliott's counsel inquired about it that day, and the circuit court faxed him a copy.

. Not only did the circuit court judge find Elliott’s claims without merit, but he also recommended that the district attorney’s office prosecute Elliott for perjury.

.The amended order made no substantive changes to the original order, except to omit discussion of the untimeliness of Elliott's initial motion for post-conviction relief.