BARNES, J.,
for the Court:
¶ 1. Wallace Whatley, appearing pro se, appeals the Rankin County Circuit Court’s dismissal of his motion for post-conviction relief (PCR). Finding no error, we affirm.
STATEMENT OF THE FACTS AND PROCEDURAL HISTORY
¶ 2. In November 2008, a Rankin County grand jury returned a three-count indictment against Whatley for sale of Dilaudid, a schedule II controlled substance, possession of more than forty dosage units of Dilaudid, and possession of a firearm by a felon, respectively. He was also indicted as a habitual offender under Mississippi Code Annotated section 99-19-81 (Rev. *465 2007).[1] In September 2009, Whatley fired his first lawyer, Richard Rehfeldt, and hired Cynthia Stewart to represent him. He also entered the first of two plea petitions. In it, he pleaded guilty to all three counts of the indictment. Whatley listed his “physical and mental health” as “uncertain” and stated that he was not under the influence of any drugs “except methadone.” This plea petition was signed on September 28, 2009 (the date of the plea hearing), and a judgment of conviction for the three counts was signed as well, and entered on October 7, 2009. However, at the plea hearing, at some point Whatley ran out of the courtroom and did not return. A bench warrant was issued for Whatley’s arrest when he failed to appear at his sentencing hearing, set for January 2010. Whatley later explained that he fled the courtroom because before the hearing he had received a letter from his methadone clinic stating that if he was imprisoned, and thereby suddenly taken off his methadone treatments, he could have a stroke. Whatley “stayed gone” for one and one-half months, and turned himself in after “detoxing.”
¶ 8. In October 2010, Whatley changed lawyers yet again, substituting Stewart with Percy Stanfield and Beverly Poole. In December 2010, another plea hearing was held where Whatley entered a second plea of guilty for Count I’s charge of sale of Dilaudid as a subsequent drug offender under Mississippi Code Annotated section 41-29-147 (Rev.2009),[2] but not as a habitual offender. The trial court entered an order to nolle prosequi the second and third counts. The trial judge sentenced Whatley as a subsequent drug offender to sixty years in the custody of the Mississippi Department of Corrections (MDOC), with release after serving twenty of the sixty years, followed by five years of post-release supervision. He was also ordered to pay a fine of $5,000 and various court costs and fees.
¶ 4. In August 2011, Whatley filed a PCR motion alleging his indictment was improper; his plea, involuntary; his sentence, illegal; the judge, biased; and his counsel, ineffective. Attached to his motion were affidavits, dated March 2011, from Stewart, Stanfield,[3] and a paralegal, recounting his plea negotiations. Further, Whatley attached several letters, including an October 2010 letter from his counsel, Poole, to the district attorney about factors to consider for Whatley’s plea recommendation (his health, fleeing the courtroom during his first plea hearing, and forfeiture of certain casino winnings), as well as several letters from Poole to Whatley about the plea negotiations. Whatley also attached a drug store print-out of his pharmacy prescriptions from January 2008 to *466 June 2010, including prescriptions for Oxycontin, methadone, and Dilaudid.
¶ 5. The trial court dismissed Whatley’s motion. He now appeals,[4] raising three issues: he was entitled to a competency hearing before his plea hearing; his guilty plea was involuntary; and his counsel was ineffective. Whatley also discusses, within these issues, the validity of his indictment and sentence; so, we shall discuss these matters as well.
STANDARD OF REVIEW
¶6. In reviewing the trial court’s dismissal of a motion for post-conviction relief, this Court will not disturb the trial court’s factual findings unless they are found to be clearly erroneous. Williams v. State, 872 So.2d 711, 712 (¶ 2) (Miss.Ct.App.2004). Questions of law are reviewed de novo. Id.
ANALYSIS
1. Jurisdiction
¶ 7. Whatley’s notice of appeal was not entered by the trial court within thirty days of entry of the trial court’s judgment. The appellate rules require that the notice of appeal “shall be filed with the clerk of the trial court within 30 days after the date of entry of the judgment or order appealed from.” M.R.A.P. 4(a). The trial court dismissed Whatley’s PCR motion on September 13, 2011. Whatley’s notice of appeal was stamped “filed” by the circuit court clerk on October 18, 2011, but the notice was otherwise without a date.[5] Generally, an appeal shall be dismissed unless the notice of appeal is timely filed under Mississippi Rule of Appellate Procedure 4 or 5. M.R.A.P. 2(a)(1). However, appeals of PCR motions are governed by Mississippi Rule of Appellate Procedure 2(c), which allows this Court to suspend the requirements of the appellate rules in the interest of justice. Therefore, this Court may suspend Rule 4(a) to allow an out-of-time appeal in criminal cases and “civil” PCR actions. See M.R.A.P. 4 cmt.
¶ 8. Even though the State has not challenged appellate jurisdiction here, we must determine whether jurisdiction exists. The prison-mailbox rule states that in pro se post-conviction relief proceedings, the prisoner’s motion is considered delivered for filing when the prisoner gives the documents to prison authorities for mailing. Sykes v. State, 757 So.2d 997, 1000-01 (¶ 14) (Miss.2000). The State bears the burden of proving the prisoner’s notice of appeal is untimely filed. Melton v. State, 930 So.2d 452, 455 (¶ 8) (Miss.Ct.App.2006).
¶ 9. The record does not indicate when Whatley delivered his documents to prison authorities for mailing. However, since his notice of appeal was received by the Court only five days late, it is possible that the documents were delivered to prison authorities within the time frame allowed *467 by Rule 4(a). Accordingly, we exercise our discretion under Rule 2(c) to suspend the thirty-day requirement to the extent Whatley’s filing may have been untimely. We therefore find jurisdiction proper and address Whatley’s appeal on the merits.
2. Indictment
¶ 10. Whatley discusses, in relation to his other issues, that his indictment was defective because Count I did not specify the amount of Dilaudid he sold, but only stated “a quantity.”[6] Whatley maintains that he only sold one dosage unit of Dilaudid, but there is no evidence in the record of this fact.
¶ 11. Indictments must contain “a plain, concise and definite written statement of essential facts constituting the offense charged and shall fully notify the defendant of the nature and cause of the accusation.” URCCC 7.06. “The purpose of the indictment is to provide the accused reasonable notice of the charges against him so that he may prepare an adequate defense.” Brawner v. State, 947 So.2d 254, 265 (¶ 31) (Miss.2006) (citing Brown v. State, 890 So.2d 901, 918 (¶61) (Miss.2004)). The ultimate test for the validity of an indictment is whether the defendant was prejudiced in preparing his defense. Medina v. State, 688 So.2d 727, 730 (Miss.1996).
¶ 12. There is no requirement that Whatley’s indictment contain the amount of Dilaudid he sold. See Miss.Code Ann. § 41 — 29—139(b)(1) (Supp.2012). As written, the indictment gave Whatley reasonable notice of the charges against him; and he was not prejudiced in preparing his defense.
¶ 13. Whatley also complains that there was no subsection cited in his indictment for the charge. Whatley was charged for Count I under Mississippi Code Annotated section 41-29-139 (Supp.2012). There is no requirement under Rule 7.06, however, that an indictment contain the statutory subsection. Further, Whatley makes no claim that he was misinformed about the true nature of the crime charged because of this omission. The indictment includes the essential facts concerning the offense charged and adequately informed Whatley of the nature of the charges against him, without the subsection.
¶ 14. Additionally, Whatley entered a valid guilty plea, which operates as a waiver of any possible non-jurisdictional defects in his indictment. See Garner v. State, 944 So.2d 934, 939 (¶14) (Miss.Ct.App.2006) (citing Brooks v. State, 573 So.2d 1350, 1355 (Miss.1990)). The only exceptions to this waiver are if the indictment fails to charge an essential element of the crime or the court lacks subject-matter jurisdiction. Kincaid v. State, 711 So.2d 873, 877 (¶ 20) (Miss.1998) (citing Jefferson v. State, 556 So.2d 1016, 1019 (Miss.1989)). Neither of these exceptions are present here. Accordingly, we find Whatley’s indictment was not defective.
3. Legality of Sentence
¶ 15. Relatedly, Whatley claims that his sentence was inconsistent with the charge in his indictment and thereby illegal. Whatley was indicted under section 41-29-139. Subsection (b)(1) of this code section provides that offenders may be sentenced to not more than thirty years’ imprisonment for sale of a schedule II substance, such as Dilaudid. The statute also provides that for possession of one dosage unit, a person “may” be charged for a misdemeanor “or” felony, and sen *468 tenced to one to four years’ imprisonment, under section 41-29-189(c)(l)(A). Whatley argues that he should have been sentenced under subsection (c)(1)(A) because he only sold one dosage unit of Dilaudid.
¶ 16. This argument is without merit. It is well established that sentencing is “within the discretion of the trial court” and not subject to appellate review “if it is within the limits prescribed by statute.” Jackson v. State, 965 So.2d 686, 688 (¶ 6) (Miss.2007) (quoting Reynolds v. State, 585 So.2d 753, 756 (Miss.1991)). Whatley pleaded guilty and was sentenced for the “sale,” not “possession,” of Dilau-did. The trial court sentenced Whatley as a subsequent drug offender under section 41-29-147, and not as a habitual offender, in conformity with his plea negotiations. While his sentence was doubled as a subsequent drug offender, if Whatley had been sentenced as a habitual offender under section 99-19-81, the trial court would have had no choice but to sentence him to the maximum sentence without the possibility of probation, parole, or a suspended or reduced sentence. Because Whatley was sentenced as a “subsequent drug offender,” he was sentenced to sixty years, but the trial court, in its discretion, only ordered Whatley to serve twenty years, after which he would be released. What-ley’s sentence was “within the limits prescribed by statute.”
¶ 17. In his reply brief, Whatley also argues that his sentence was grossly disproportionate to the offense, in violation of the Eighth Amendment. There is no merit to this contention. Whatley was sentenced for selling Dilaudid in accordance with the proper statutory provisions.
4. Guilty Plea
¶ 18. Whatley argues that his guilty plea was invalid because he was coerced “in a deceitful manner” by his family and legal counsel. Additionally, Whatley claims he was incompetent at the time of his plea hearing.
¶ 19. A guilty plea will be found valid if it is voluntarily and intelligently made by the defendant before the trial court. Burrough v. State, 9 So.3d 368, 373 (¶ 11) (Miss.2009). A plea is voluntary and intelligent if the trial court advises “the defendant of his rights, the nature of the charge against him, as well as the consequences of the plea.” Id. (citing Harris v. State, 806 So.2d 1127, 1130 (¶ 9) (Miss.2002)). Moreover, “[s]olemn declarations in open court carry a strong presumption of verity.” Harris, 806 So.2d at 1130 (¶ 9). The petitioner has the burden of proving his plea is invalid. Hannah v. State, 943 So.2d 20, 25 (¶ 11) (Miss.2006) (citing Gardner v. State, 531 So.2d 805, 810 (Miss.1988)).
¶ 20. Specifically, Whatley argues he was “induced” to plead guilty by his first counsel, Rehfeldt, because he “coerced” Whatley into forfeiting $25,580 (Whatley’s $35,000 casino winnings less Rehfeldt’s attorney’s fees) to the Rankin County District Attorney’s Office in the hope that Whatley would receive a more favorable plea offer. Whatley claims the prosecution assumed the forfeited money was “drug money” instead of casino winnings. What-ley also complains that his last two lawyers, Poole and Stanfield, informed him that his “best bet” was to enter an open plea in front of Judge Samac S. Richardson, who would decide his sentence. Therefore, he agreed to plead guilty. Instead, Whatley had to enter a plea before Judge William E. Chapman III, who Whatley claimed showed bias against him. Whatley also contends that Poole coerced him, through “inaccurate information” that he “miscomprehended,” into taking “an exceptionally large sentence.” Whatley further argues that his plea was involuntary *469 for a number of other reasons, such as that his mother convinced him to plead guilty and that his lawyers told him exactly what to say at the plea hearing. Finally, he claims he was very confused at the plea hearing and “constantly changing his mind concerning the plea offer.”
¶ 21. Whatley’s arguments regarding the involuntariness of his guilty plea are without merit. The transcript shows that at Whatley’s second plea hearing, he voluntarily admitted under oath to Count I’s charge of sale of Dilaudid. The State explained its proof against Whatley. The trial judge clearly explained to Whatley the nature of the charge, the effect of the plea on his rights, and the minimum and maximum sentences. Whatley denied being coerced to plead guilty. He indicated he understood the charge against him and the consequences of pleading guilty. Whatley also denied he was under the influence of drugs or alcohol, or had ever been treated for a mental illness or disorder. He acknowledged his satisfaction with his lawyers’ performance. Moreover, Whatley signed a guilty plea petition to the same effect.
¶22. The trial judge found Whatley competent to enter a guilty plea. However, the transcript did show Whatley was initially indecisive at the December 2010 plea hearing. He questioned the prosecution’s recommended sentence of sixty years to serve “with release after twenty years” and five years’ post-release supervision, and why the recommendation was not “forty years suspended.” The trial judge explained that since Whatley was a prior felon, the judge could not suspend time, but he could “releas[e] him after he has served so many years,” which had the same “practical effect.” Due to Whatley’s questions, the trial judge stopped the proceedings for Whatley to confer with his lawyers. At this time, Whatley was also allowed to speak with his mother about his plea. After the conference, Whatley proceeded to plead guilty to Count I, and stated he had no further questions.
¶ 23. As for Whatley’s allegation of judicial bias, although Judge Chapman’s comments are not a part of the transcript, Poole stated in a letter to Whatley dated December 2010, which was attached to Whatley’s PCR motion, that Judge Chapman had explained the following at the plea hearing: had Whatley gone to trial and been found guilty, he would have been sentenced to sixty years, day-for-day. Whatley argues this comment indicated judicial bias. We disagree. The judge was merely explaining that if Whatley was sentenced as a habitual offender, the judge would have no discretion in sentencing Whatley, and would be required to give Whatley the maximum sentence of sixty years. Instead, Whatley was not sentenced as a habitual offender and therefore did not have to serve sixty years, day-for day, but only twenty years. Accordingly, this comment cannot be considered judicial bias.
¶ 24. In sum, there is no evidence in the record to support Whatley’s claim that his plea was involuntary or unintelligent.
5. Competency Hearing
¶25. Relatedly, Whatley argues that he was entitled to a competency hearing because he did not understand the consequences of his plea. In his PCR motion, Whatley claimed he is paranoid and schizophrenic, and that he lied at the plea hearing about his mental competency. Whatley points to the facts he ran out of his first plea hearing, and was indecisive at his second plea hearing, as evidence of his mental instability. Whatley also claims he was denied his prescription medication while imprisoned, which made him mentally unstable at his plea hearing. However, *470 he does not specify the type of medication or which plea hearing.
¶26. Rule 9.06 of the Uniform Rules of Circuit and County Court governs a defendant’s competency to stand trial. It reads:
If before or during trial the court ... has reasonable ground to believe that the defendant is incompetent to stand trial, the court shall order the defendant to submit to a mental examination .... After the examination the court shall conduct a hearing to determine if the defendant is competent to stand trial.
When a defendant enters a guilty plea, the same standard for competency applies. Smith v. State, 831 So.2d 590, 598 (¶ 11) (Miss.Ct.App.2002). Having “reasonable grounds” is key in assessing the trial court’s responsibility to order a competency hearing. Id.
¶ 27. Here, there were no “reasonable grounds” for the trial court to order a competency hearing. Over an approximately two-year period, none of Whatley’s four lawyers ever raised any competency issues before the trial court. In fact, Whatley’s second lawyer, Stewart, attested in Whatley’s first plea petition that she was satisfied he was mentally competent, physically sound, and not under the influence of drugs or intoxicants. Although Whatley claims he was on methadone treatments for a narcotics addiction around the time of his first plea hearing, this fact is not necessarily evidence of mental incompetency. At the plea hearing in December 2010, the trial judge was able to observe Whatley’s demeanor and behavior, and found him competent “to understand the nature of the criminal offense” to which he pleaded guilty. There is no evidence to support Whatley’s assertions that he was mentally incompetent at the time he entered his guilty plea.
6. Ineffective Assistance of Counsel
¶ 28. Whatley, who has been represented by four lawyers since his arrest, now claims each of them was ineffective for various reasons. He argues that the outcome of his plea would have been different but for their errors.
¶ 29. To prove ineffective assistance of counsel, the defendant must show counsel’s performance was deficient, and this deficiency prejudiced the defense. Liddell v. State, 7 So.3d 217, 219 (¶ 6) (Miss.2009) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). There is a strong presumption counsel was competent. Id. at 219-20 (¶ 6) (citing Bennett v. State, 990 So.2d 155, 158 (¶ 9) (Miss.2008)). In the context of a guilty plea, the defendant must show “unprofessional errors of substantial gravity” and that “but for counsel’s errors he would not have entered the plea.” Buck v. State, 838 So.2d 256, 260 (¶ 12) (Miss.2003) (quoting Reynolds v. State, 521 So.2d 914, 918 (Miss.1988)).
¶ 30. Specifically, Whatley argues that his first counsel, Rehfeldt, mistakenly persuaded him to forfeit his casino winnings, because the forfeiture was later used against him in the plea hearing, but he fails to state how it was used against him. Whatley claims Rehfeldt also failed to investigate his case and produce exculpatory evidence, but Whatley does not reveal what that evidence might be. Whatley states his second counsel, Stewart, failed to challenge his defective indictment, failed to request a competency hearing, withheld vital information from the court about his methadone treatment, and refused to represent him after he ran out of the courtroom during his first plea hearing. Finally, Whatley claims his last lawyers, Stanfield and Poole, also failed to challenge his indictment, failed to request *471 a competency hearing, and coerced him to accept a guilty plea, which was ill-advised because there was insufficient evidence of his guilt.
¶ 31. Whatley’s contentions are without merit. The record is devoid of evidence that any of Whatley’s lawyers performed deficiently. There is no evidence the forfeiture had anything to do with Whatley’s plea hearing or that What-ley’s counsel failed to investigate his case. Stewart stated in her affidavit that What-ley fired her after his running-out-of-the-courtroom incident. Poole also sent a letter to the district attorney explaining Whatley’s actions. As discussed previously, Whatley’s contentions regarding a faulty indictment and the need for a competency hearing are without merit. There is no evidence Whatley was coerced by Stanfield and Poole into pleading guilty. “Counsel has ‘a duty to fairly, even if that means pessimistically, inform the client of the likely outcome of a trial based upon the facts of the case.’ ” Robinson v. State, 964 So.2d 609, 612 (¶ 8) (Miss.Ct.App.2007) (quoting Daughtery v. State, 847 So.2d 284, 287 (¶ 6) (Miss.Ct.App.2003)). If the attorney believes that it is in his client’s best interest to plead guilty, it is his duty to inform him of that fact. Id. Whatley’s lawyers did just that.
¶ 32. Moreover, Whatley’s testimony at the second plea hearing contradicts his allegations. There, he stated under oath that he was “completely satisfied” with his counsel’s legal representation. Whatley also signed his plea petition, acknowledging his satisfaction with his legal counsel. In conclusion, he fails to present any specific evidence that but for his counsel’s alleged deficiencies, he would not have pleaded guilty.
7. Evidentiary Hearing
¶ 33. Whatley also complains that he should have been granted an evi-dentiary hearing. We disagree. “The trial court has ‘considerable discretion’ in determining whether to grant an evidentia-ry hearing.” Elliott v. State, 41 So.3d 701, 709 (¶ 25) (Miss.Ct.App.2009) (quoting Meeks v. State, 781 So.2d 109, 114 (¶ 14) (Miss.2001)). Further, “[n]ot every motion for post-conviction relief must be afforded a full adversarial hearing by the trial court.” Id. (quoting Jones v. State, 795 So.2d 589, 590 (¶3) (Miss.Ct.App.2001)). The movant must prove, through affidavits or otherwise, the potential existence of such facts that, if proven at the hearing, would entitle him to relief. Id. Although Whatley does attach several affidavits and letters to his PCR motion, they do nothing to further his arguments.
CONCLUSION
¶ 34. Based on the foregoing, the trial court did not err in dismissing Whatley’s PCR motion.
¶ 35. THE JUDGMENT OF THE RANKIN COUNTY CIRCUIT COURT DISMISSING THE MOTION FOR POST-CONVICTION RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO RANKIN COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, ROBERTS, CARLTON, MAXWELL AND FAIR, JJ„ CONCUR. JAMES, J., NOT PARTICIPATING.

.An attachment to Whatley’s indictment shows that in July 1999 he was convicted in a case with two separate cause numbers for what appears to be the same charge: the sale of Dilaudid. However, Whatley's plea petitions show he was also convicted of robbery. A letter from Whatley’s counsel (Poole) to the district attorney, attached to his PCR motion, confirms Whatley pleaded guilty to robbery without a firearm in the 1980s. Section 99-19-81 provides that persons convicted of a felony who have been convicted twice previously of felonies for separate incidents at different times and sentenced to separate terms of one year or more shall be sentenced to the maximum term of imprisonment, and are not eligible for parole or probation, nor shall their sentence be reduced or suspended.

. Section 41-29-147 allows for enhanced sentences and fines for subsequent drug offenses, up to twice the term and amount otherwise authorized.

. Only the last two pages of a four-page document, which is presumably Stanfield's affidavit, is attached to Whatley’s PCR motion. The first two pages are not included in the record.

. Whatley attached several documents to his initial and reply briefs that are not a part of the record. It is well established that “[t]he burden rest[s] upon [the] appellant to see to it that the record contain[s] all data essential to an understanding and presentation of matters relied upon for reversal on appeal.” Shelton v. Kindred, 279 So.2d 642, 644 (Miss.1973) (citing Willenbrock v. Brown, 239 So.2d 922, 925 (Miss.1970)). "[An appellate court] may not act upon or consider matters which do not appear in the record and must confine itself to what actually does appear in the record.” Id. The documents Whatley attached to his briefs are not a part of the appellate record, and thus cannot be considered by this Court.

. We note that some of the other documents in the record for Whatley’s appeal, such as his motion to proceed in forma pauperis and the related affidavit, are signed and dated October 11, 2011.

. Specifically, the indictment reads that Whatley “did willfully, unlawfully, felo-niously, knowingly and intentionally sell, distribute or transfer a quantity of Dilaudid.... ”