GRIFFIS, J.,
 

 for the Court.
 

 ¶ 1. John Anthony Magyar appeals the Washington County Circuit Court’s order denying his motion for post-conviction collateral relief. Magyar asserts that: (1) his plea was not knowingly, intelligently, and voluntarily given; (2) his counsel was ineffective; and (3) the trial court erred by not ordering an evidentiary hearing.
 

 FACTS
 

 ¶ 2. Magyar pleaded guilty to sexual assault. At the time of his guilty plea, Magyar was a high school teacher. During the hearing, Magyar testified that his plea was given freely, voluntarily, and without coercion. The trial judge listed every right that Magyar was waiving, and Magyar stated that he understood that he was waiving those rights and that he still wanted to plead guilty. Magyar acknowledged the elements of his crime and then pleaded guilty.
 

 ¶ 3. On August 22, 2005, the trial court sentenced Magyar to twenty years with ten years suspended and five years of probation. The trial court also ordered Magyar to register as a sex offender under Mississippi Code Annotated section 45-33-25 (Rev.2004).
 
 [1]
 

 STANDARD OF REVIEW
 

 ¶ 4. In reviewing a trial court’s decision to deny a motion for post-conviction collateral relief, the standard of review is clear. The trial court’s denial will not be reversed absent a finding that the trial court’s decision was clearly erroneous.
 
 Smith v.
 
 
 *854
 

 State,
 
 806 So.2d 1148, 1150(¶ 3) (Miss.Ct.App.2002).
 

 ANALYSIS
 

 I. Was Magyar’s plea knowing, intelligent, and voluntary
 
 ?
 

 A. Sex Offender Registration
 

 ¶ 5. Magyar argues that his plea was not given knowingly, intelligently, and voluntarily because neither his attorney nor the trial judge informed him that he would have to register as a sex offender before he was sentenced. During the guilty plea hearing, the trial judge stated, “do you understand that you’re making an open plea, ... I am not bound by anything anybody has told you. If I thought it was appropriate in your case to sentence you to 30 years ... that’s within my discretion. Do you understand that?” Magyar responded, “[y]es, sir.”
 

 ¶ 6. This Court has previously held that: The burden of proving that a guilty plea was not made voluntarily is on the defendant. If this burden is not met, the defendant’s plea must be upheld as one that was made voluntarily, knowingly and intelligently. It should be noted that “solemn declarations in open court [by a defendant] carry a strong presumption of verity.” Further, the record must reflect that the trial court thoroughly discussed with the defendant all of the consequences of a
 
 guilty plea, including the waiver of rights, satisfaction with one’s attorney and advisement on the maximum and minimum penalties one can acquire for the crime committed.
 

 Barnes v. State,
 
 803 So.2d 1271, 1274(¶ 10) (Miss.Ct.App.2002) (internal citations omitted) (emphasis added). We, therefore, must determine if failure to advise Magyar of the requirement to register as a sex offender equates to a failure to advise Magyar of the maximum or minimum penalty for the crime of sexual assault or a waiver of his rights.
 

 ¶ 7. Mississippi Code Annotated section 45-33-25(1), which was applicable at the time, states, “[a]ny person residing in this state who has been convicted of any sex offense ... shall register with the Mississippi Department of Public Safety.” Other jurisdictions have decided cases based on statutes similar to our section 45-33-25. We find persuasive the Supreme Court of Nevada’s opinion in
 
 Nollette v. State,
 
 118 Nev. 341, 46 P.3d 87 (2002).
 

 ¶ 8. In this case, the Nevada Supreme Court had to determine if Nollette’s guilty plea was given knowingly, intelligently, and voluntarily even though he was not informed that he would have to register as a sex offender.
 
 Nollette,
 
 46 P.3d at 89. The
 
 Nollette
 
 court stated that:
 

 the totality of the circumstances must demonstrate that a defendant pleaded guilty with knowledge of the direct consequences of his plea. Direct consequences are those ramifications that have “ ‘a definite, immediate and largely automatic effect on the range of the defendant’s punishment.’ ” Collateral consequences, by contrast, do not affect the length or nature of the punishment and are generally dependent on either the court’s discretion, the defendant’s future conduct, or the discretion of a government agency. Because collateral consequences of a criminal conviction are often limitless, unforeseeable or personal to the defendant, requiring an advisement with respect to every conceivable collateral consequence “would impose upon the trial court an impossible, unwarranted and unnecessary burden.”
 

 Id.
 
 (footnotes omitted). The court then held:
 

 
 *855
 
 A majority of jurisdictions that have considered the issue hold that sex offender registration is a collateral consequence of a guilty plea. Most of these holdings are based on the conclusion that registration requirements are not punitive, but instead serve a regulatory or remedial purpose. We agree with the majority of jurisdictions and hold that sex offender registration is a collateral consequence of a guilty plea because it is not a penal consequence.
 

 Id.
 
 at 89-90 (footnotes omitted). The court concluded:
 

 Nevada’s sex offender registration and notification requirement is a collateral consequence of a guilty plea because it is not sufficiently punitive to have an immediate and direct effect on the defendant’s range of punishment. Because notification and advisement of a collateral consequence of a criminal conviction is not a prerequisite to the entry of a constitutionally valid plea, we conclude that the district court’s failure to advise Nollette of the registration requirement before accepting his guilty plea does not render it constitutionally infirm.
 

 Id.
 
 at 91.
 

 ¶ 9. This Court has previously delineated the difference between collateral and punitive consequences of a guilty plea:
 

 It is still incumbent on a trial judge to ascertain that the defendant knew the possible penalties which might be imposed for the charged offense to which the plea was made and there is no contention that this was not done. Therefore, a plea’s possible enhancing effect on a subsequent sentence is merely
 
 a collateral consequence of the conviction; it is not the type of consequence about which a defendant must be advised before the defendant enters the plea.
 

 Quinn v. State,
 
 739 So.2d 419, 421(¶ 12) (Miss.Ct.App.1999) (emphasis added).
 

 ¶ 10. Mississippi Code Annotated section 45-33-39(1) (Rev.2004) provides:
 

 The court shall provide written notification to any defendant charged with a sex offense as defined by this chapter of the registration requirements of Sections 45-33-25 and 45-33-31. Such notice shall be included on any guilty plea forms and judgment and sentence forms provided to the defendant. The court shall obtain a written acknowledgment of receipt on each occasion.
 

 This statute does not supplement the requirements for a guilty plea to be knowing, intelligent, and voluntary, which are found in Uniform Rule of Circuit and County Court 8.04(3) and (4). Section 45-33-39(1) merely requires that various authorities inform criminal defendants of their post-release obligations to society.
 
 [2]
 
 Certainly, it would be helpful if trial courts and the assistant district attorneys mentioned this post-release requirement in their guilty plea forms. Here, the sentencing order did in fact include notice of Magyar’s obligation to register as a sex offender. We find this to be sufficient under section 45-33-39(1).
 

 ¶ 11. We find that the fact that Magyar must register as a sex offender is merely a collateral consequence of his guilty plea. We find that this issue is without merit.
 

 
 *856
 

 B. Right to Confront Witnesses
 

 ¶ 12. Next, Magyar argues that his plea was not given knowingly, intelligently, and voluntarily because his attorney misinformed him regarding his right to confront witnesses. He claims that his public defender told him that videotaped testimony from the victim would be entered into evidence and that “it did not matter that the complaining witness would not [testify at trial].... ”
 

 ¶ 13. In order for a plea to be considered voluntary, knowing, and intelligent, a defendant must be told that he or she is waiving is “his/her constitutional ... right to confront and cross-examine adverse witnesses....” URCCC 8.04(A)(4)(c). During Magyar’s guilty plea, the trial court informed Magyar that “[a]t trial you would have the right to cross-examine all the witnesses who testify against you. You have the right to confrontation, which means they must testify in your presence where you can observe them as they testify.... Do you understand your rights?” Magyar responded, “[y]es sir.” We have previously stated, “[e]ven if a defendant receives erroneous advice from defense counsel, any misunderstanding created by this advice may be corrected by the court during the voluntariness inquiry.”
 
 Thomas v. State,
 
 881 So.2d 912, 917(¶ 13) (Miss.Ct.App.2004).
 

 ¶ 14. While Magyar may be correct that his attorney did not properly inform him of his right of confrontation, we find that the trial court adequately informed Magyar of this right before Magyar pleaded guilty. Therefore, there is no merit to Magyar’s claim that his guilty plea was not given knowingly, intelligently, or voluntarily-
 

 II. Was Magyar’s counsel ineffective?
 

 ¶ 15. Magyar also argues that his attorney was ineffective because he: (1) did not advise Magyar that he would have to register as a sex offender, (2) did not conduct a proper investigation, and (3) told Magyar that he would only receive a suspended sentence. To prove ineffective assistance of counsel, a defendant must show that: (1) his counsel’s performance was deficient, and (2) this deficiency prejudiced his defense.
 
 Strickland v. Washington,
 
 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The burden of proof rests with the defendant to demonstrate both prongs.
 
 McQuarter v. State,
 
 574 So.2d 685, 687 (Miss.1990).
 

 ' 1116. In the context of a guilty plea, “[t]he defendant claiming ineffective assistance of counsel must show, by a preponderance of the evidence, that there is a reasonable probability that had counsel’s assistance been effective, he would not have pled guilty, but would have insisted on going to trial.”
 
 Pleas v. State,
 
 766 So.2d 41, 43(¶ 7) (Miss.Ct.App.2000). Under
 
 Strickland.,
 
 there is a strong presumption that counsel’s performance falls within the range of reasonable professional assistance.
 
 Strickland,
 
 466 U.S. at 689, 104 S.Ct. 2052. Magyar must allege both prongs of
 
 Strickland
 
 with specificity and detail.
 
 Brooks v. State,
 
 573 So.2d 1350, 1354 (Miss.1990).
 

 ¶ 17. Magyar attached four affidavits to his motion for post-conviction collateral relief. Magyar’s first affidavit was his own. Magyar’s affidavit reinforced the allegations that he makes in his brief and made in his motion. The second affidavit is that of a former prosecutor, Tommy Mayfield. Mayfield’s affidavit was an expert opinion, based solely on the record, that Magyar’s trial counsel was ineffective. The third affidavit is that of Magyar’s public defender, Matthew Eichenberger; however, it is not attested. The final affidavit was given by Magyar’s father, John C. Magyar. In this affidavit, Magyar’s father stated that
 
 *857
 
 the Washington County Public Defender advised him after his son was sentenced that “the Washington County Public Defender’s Office had not done an adequate job of representing ... Magyar.” We will now address the validity of two of the affidavits.
 

 ¶ 18. We will not consider Magyar’s father’s affidavit because it is hearsay. The Mississippi Supreme Court has held that it will not consider hearsay affidavits attached to a motion for post-conviction collateral relief, because “Miss.Code Ann. § 99-39-9(l)(e) allows the petitioner to present affidavits
 
 from witnesses who tuould testify at trial,
 
 not hearsay statements .... ”
 
 Smith v. State,
 
 877 So.2d 369, 380(¶ 21) (Miss.2004) (emphasis added).
 

 ¶ 19. This Court will not consider Eichenberger’s affidavit because it is unattested. Therefore, the Court cannot determine whether or not Eichenberger adopted the statements contained therein. The Mississippi Supreme Court has stated, “[a]n unsworn statement ... is insufficient evidence to support [a petitioner’s] allegation.”
 
 Wilcher v. State,
 
 863 So.2d 719, 744(¶ 80) (Miss.2003).
 

 ¶ 20. Therefore, we will only consider Magyar’s affidavit, Mayfield’s affidavit, and the court records that Magyar attached as exhibits to his motion.
 

 A.Requirement to Register As a Sex Offender
 

 ¶ 21. Magyar cannot show that his counsel was ineffective because he did not tell Magyar that Magyar had to register as a sex offender. As discussed above, Mississippi law does not require that Magyar be informed that he has to register as a sex offender for his guilty plea to be knowing, intelligent, and voluntary. Indeed, Magyar’s sentencing order was sufficient to comply with section 45-33-39(1). Furthermore, Magyar has failed to specifically state how knowing that he had to register as a sex offender would have made him decide to go to trial, which is required under our holding in
 
 Pleas,
 
 766 So.2d at 43(¶ 7).
 

 B. Suspended Sentence
 

 ¶ 22. Magyar argues that his attorney encouraged him to enter a guilty plea because he told Magyar that Magyar would only receive a suspended sentence. Magyar’s argument is contradicted by Magyar’s testimony that he understood that the trial judge could sentence him to a maximum term of thirty years in prison. Magyar stated that he was not pleading guilty because someone threatened him or promised him anything. Magyar also stated that it was his decision to enter a plea of guilty, and all of this testimony was reinforced by the language in the plea petition. As stated above, “[e]ven if a defendant receives erroneous advice from defense counsel, any misunderstanding created by this advice may be corrected by the court during the voluntariness inquiry.”
 
 Thomas,
 
 881 So.2d at 917(¶ 13). Magyar testified under oath during his guilty plea hearing that he was satisfied with his attorney’s representation. We find no merit to this issue.
 

 C. Failure to Investigate
 

 ¶ 23. Magyar’s final claim for ineffective assistance of counsel is that his attorney should have investigated and subpoenaed certain unidentified impeachment witnesses. In his affidavit, Magyar asserts that his attorney failed to investigate the victim’s credibility, which could have been impeached. In a motion for continuance, Magyar’s attorney argued that he had “only recently learned of additional information as to potential past false allegations made by the alleged victim in this
 
 *858
 
 matter. As a result of this new information, ... a Subpoena has been issued for employment records and documents of the business of the alleged victim’s family.” Magyar states that this motion was never brought for a hearing because his attorney advised him that pretrial motions would make the judge angry.
 

 ¶ 24. Mississippi Code Annotated section 99-39-9(l)(e) (Rev.2007) requires:
 

 A specific statement of the facts which are not within the prisoner’s personal knowledge.
 
 The motion shall state how or by whom said facts will be proven. Affidavits of the tvitnesses who will testify and copies of documents or records that will be offered shall be attached to the motion. The affidavits of other persons and the copies of documents and records may be excused upon a showing, which shall be specifically detailed in the motion, of good cause why they cannot be obtained.
 
 This showing shall state what the prisoner has done to attempt to obtain the affidavits, records and documents, the production of which he requests the court to excuse.
 

 (Emphasis added). In the present case, Magyar attached four affidavits to his initial motion. This Court, as mentioned above, will not consider the affidavits of Magyar’s father and the public defender. In his brief, Magyar argues that he told his attorney about “two potential witnesses which could bring the credibility of the prosecutrix into question. Counsel interviewed only one of those witnesses and made no reasonable effort to locate others.” He also argues that he would have gone to trial and prevailed if his attorney would have “made an effort to procure the attendance of those witnesses at trial.... ”
 

 ¶ 25. We find that Magyar has not fulfilled the requirements of section 99-39-9(l)(e). Magyar has included an exhibit which lists facts that are not within his personal knowledge. In this document, Magyar states that facts not within his knowledge will be proven by “documents in the Court file, the District Attorney’s file, the file of the investigating agency, files of the Washington County Public Defender and testimony from my parents and past and present personnel of the Washington County Public Defender’s Office .... ” Magyar, however, has not attached any proper affidavits from any of these purported witnesses. Furthermore, Magyar has not specifically told this Court what facts each witness will provide or specifically shown this Court in detail why proper affidavits were not supplied.
 

 ¶ 26. In
 
 Robinson v. State,
 
 809 So.2d 734, 736 (¶¶ 7-10) (Miss.Ct.App.2002), we denied a motion for post-conviction relief because the petitioner did not follow the mandates of section 99-39-9(l)(e) and because the petitioner’s motion lacked specificity. In
 
 Robinson,
 
 the petitioner “list[ed] a number of potential witnesses but fail[ed] to set out any factual details concerning what the nature of them testimony would have been or to support such factual details with affidavits from the potential witnesses.”
 
 Id.
 
 at (¶ 9). In this case, Magyar neither listed these possible impeachment witnesses in his motion, nor did he provide any affidavits. Therefore, this Court has no idea if these alleged impeachment witnesses exist and what their testimonies would be.
 

 ¶ 27. The supreme court has stated:
 

 [The petitioner] failed to allege with the “specificity and detail” required that his counsel’s performance was deficient and that the deficient performance prejudiced the defense. Put another way, the petitioner’s showing was not in proper form. The facts he alleged in his proposed motion and the brief submitted in support thereof were not supported by any affidavits other than his own.
 

 
 *859
 

 Brooks,
 
 573 So.2d at 1354 (citation omitted). Magyar provided this Court with his own affidavit, Mayfield’s affidavit, and some documents from his criminal file. Magyar’s affidavit, however, is substantially impeached by Magyar’s statements at the plea hearing where he said that he was satisfied with his attorney’s performance.
 
 Robinson,
 
 809 So.2d at 736(¶ 10). Furthermore, Mayfield’s affidavit only stated that he was informed that there was potential exculpatory evidence available if the public defender would have conducted a proper investigation. Mayfield, however, does not specifically describe what this evidence is or the source of this evidence. Thus, Mayfield’s affidavit does not satisfy the specificity requirement found in
 
 Brooks.
 
 Therefore, we find no merit to this issue.
 

 III. Does Magyar’s motion merit an evidentiary heating?
 

 ¶ 28. Finally, Magyar argues that he is entitled to an evidentiary hearing. We find Magyar is not entitled to an evi-dentiary hearing. Mississippi Code Annotated section 99-39-11(2) provides that “[i]f it plainly appears from the face of the motion, any annexed exhibits and the prior proceedings in the case that the movant is not entitled to any relief, the judge may make an order for its dismissal and cause the prisoner to be notified.” Furthermore, we have held:
 

 A trial court has considerable discretion in determining whether to grant an evi-dentiary hearing. Not every motion for post-conviction relief filed in the trial court must be afforded a full adversarial hearing. A trial judge may disregard the assertions made by a post-conviction movant where, as here, they are substantially contradicted by the court record of proceedings that led up to the entry of a judgment of guilt.
 

 Hebert v. State,
 
 864 So.2d 1041, 1045(¶ 11) (Miss.Ct.App.2004) (internal citations omitted). We find that the trial court did not err in denying Magyar’s motion for post-conviction collateral relief without an evi-dentiary hearing in this case because Magyar’s assertions are substantially contradicted by the court record. Thus, we find that this issue has no merit.
 

 ¶ 29. THE JUDGMENT OF THE WASHINGTON COUNTY CIRCUIT COURT DENYING THE MOTION FOR POST-CONVICTION COLLATERAL RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO WASHINGTON COUNTY.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR. CHANDLER, J., NOT PARTICIPATING.
 

 [1]
 

 . The current, revised version of the statute is found at Mississippi Code Annotated section 45-33-25 (Supp.2007).
 

 [2]
 

 .
 
 The Mississippi Code contains many other examples of collateral consequences: Mississippi Code Annotated section 73-3-41 (Supp. 2006) allows for automatic disbarment of an attorney who commits certain felonies; Mississippi Code Annotated section 97-37-5 (Supp.2007) bans convicted felons from possessing certain weapons; and Mississippi Code Annotated section 97-35-27 (Rev.2006) requires convicted felons to register with local law enforcement when they move to a new town.