# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2020-CP-01123-COA

**MARKEY J. TANNER A/K/A MARKEY TANNER A/K/A MARKEY JOHNNY TANNER**                                          **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                          **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 10/05/2020 |
| TRIAL JUDGE: | HON. CHRISTOPHER LOUIS SCHMIDT |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT, SECOND JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | MARKEY J. TANNER (PRO SE) |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LAUREN GABRIELLE CANTRELL |
| NATURE OF THE CASE: | CIVIL - POST-CONVICTION RELIEF |
| DISPOSITION: | REVERSED AND REMANDED - 01/11/2022 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**CARLTON, P.J., FOR THE COURT:**

¶1.     On March 1, 2018, Markey Tanner pled guilty to two felonies: driving under the influence (DUI) causing disfigurement or death and leaving the scene of an accident. After accepting Tanner's guilty plea,[1] the Harrison County Circuit Court, Second Judicial District, sentenced him to twenty-five years in the custody of the Mississippi Department of Corrections (MDOC), with ten years suspended and fifteen years to serve for his DUI

---

[1] The record reflects that the circuit court accepted Tanner's guilty plea at a hearing on March 1, 2018, and the circuit court agreed to defer sentencing until March 20, 2018. On March 20, 2018, the circuit court held the sentencing hearing.

conviction, and twenty years in the custody of the MDOC for his conviction of leaving the scene of an accident with five years of post-release supervision. The circuit court ordered both sentences to run concurrently for a total of twenty years' incarceration and five years' post-release supervision.

¶2. Tanner filed a motion for post-conviction relief (PCR) alleging that his guilty plea was involuntarily entered and that he received ineffective assistance of counsel. The circuit court denied Tanner's PCR motion without an evidentiary hearing, despite the affidavits submitted by Tanner and his mother attesting that Tanner's counsel gave him erroneous advice regarding sentencing.

¶3. Finding error, we reverse the order denying post-conviction relief and remand to the circuit court for an evidentiary hearing.

**FACTS**

¶4. On June 12, 2020, Tanner filed a PCR motion asserting that his guilty plea was involuntarily entered and that he had received ineffective assistance of counsel. Specifically, Tanner alleged that his counsel gave him erroneous information, assuring him the circuit judge agreed that if Tanner pleaded guilty, Tanner would receive a two-year sentence. In support of his claim, Tanner attached an affidavit from his mother to his PCR motion. In the affidavit, Tanner's mother stated that she overheard Tanner's defense counsel inform Tanner that he had spoken to the circuit judge, and the circuit judge agreed that if Tanner pleaded guilty, he would sentence Tanner to fifteen years with ten years suspended, two years to

2

serve, and three years of post-release supervision.

¶5.     The circuit court entered an order denying Tanner's PCR motion without holding an evidentiary hearing on his claims.  As to Tanner's claim that his plea was involuntary, the circuit court found no merit, explaining that Tanner failed to provide any evidence in support of his claim and that Tanner's testimony under oath at his sentencing hearing contradicted his PCR claims.  In its order, the circuit court quoted the following testimony from Tanner's sentencing hearing:

> THE COURT:     Has anyone guaranteed or promised you that you would receive a specific or particular sentence or offered you anything in value in exchange for your guilty plea?
>
> [Tanner]:          No, Your Honor.
>
> . . . .
>
> THE COURT:     So irrespective of whether there is a recommendation by one side or both sides combined, Mr. Tanner, the ultimate decision on what sentence to impose is the Court's, and so long as I stay within the minimum and maximum sentences allowed by law, I can impose any sentence that I believe is appropriate?
>
> [Tanner]:          Yes, sir.
>
> THE COURT:     Knowing that, knowing that I can impose any sentence I believe is appropriate, do you still want to plead guilty today?
>
> [Tanner]:          Yes, sir.
>
> . . . .
>
> THE COURT:     And even though there may or may not be at the time of

3

sentencing some type of recommendations, I could impose up to those [forty-five] years to serve?

[Tanner]:        Yes, Your Honor.

¶6.    The circuit court also found no merit to Tanner's claim of ineffective assistance of counsel. The circuit court articulated the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), for evaluating claims of ineffective assistance of counsel and found "no indication [that] Tanner's counsel's representation fell below an objective standard of reasonableness, nor is there evidence that, but for counsel's alleged errors, the result would have been different." The circuit court also stated that "Tanner testified at his sentencing hearing that he was satisfied with the services of his attorney."

¶7.    Tanner now appeals from the circuit court's order denying his PCR motion.

**STANDARD OF REVIEW**

¶8.    "When reviewing a circuit court's denial or dismissal of a PCR motion, we will reverse the judgment of the circuit court only if its factual findings are clearly erroneous; however, we review the circuit court's legal conclusions under a de novo standard of review." *Hays v. State*, 321 So. 3d 1208, 1211 (¶4) (Miss. Ct. App. 2021), *cert. denied*, 321 So. 3d 565 (Miss. 2021).

**DISCUSSION**

¶9.    Tanner argues that the circuit court erred in denying his PCR motion without holding an evidentiary hearing to determine if Tanner's guilty plea was involuntarily entered based upon his counsel's advice and if he received ineffective assistance of counsel. Tanner claims

4

that prior to pleading guilty, the State offered him several different plea bargains, which Tanner's counsel advised him to reject. Tanner states that his counsel assured Tanner that he could get the State to offer a better deal if Tanner would plead guilty. Tanner eventually agreed to enter a guilty plea. Tanner claims that on the day of his plea hearing, his counsel exited the courtroom prior to the hearing and informed Tanner and his family that he had spoken to the circuit judge, and the circuit judge agreed to sentence Tanner to fifteen years, with ten years suspended, two years to serve, and three years of post-release supervision. Tanner asserts that if he had known that he would not receive the two-year sentence, he would not have pleaded guilty. As a result, Tanner submits that his guilty plea was involuntarily entered and that his counsel was ineffective during sentencing.

¶10. A circuit court may summarily dismiss a PCR motion without holding an evidentiary hearing "if it plainly appears from the face of the motion, any annexed exhibits and the prior proceedings in the case that the movant is not entitled to any relief." *Sylvester v. State*, 113 So. 3d 618, 621 (¶9) (Miss. Ct. App. 2013) (citation omitted); *see also* Miss. Code Ann. § 99-39-11(2) (Rev. 2020). "When the only support the defendant offers is his own affidavit, and it is contradicted by unimpeachable documents in the record, the [Mississippi] [S]upreme [C]ourt has held that an evidentiary hearing is not required." *Sylvester*, 113 So. 3d at 621 (¶9). "However, when the movant attaches an affidavit of another who supports the allegation, the trial court may be required to conduct an evidentiary hearing." *Id*. at (¶10).

¶11. In support of his PCR motion, Tanner attached an affidavit from his mother. In the

5

affidavit, Tanner's mother recounted three conversations that she overheard between Tanner and his counsel regarding Tanner's possible sentence. Tanner's mother stated that two of the conversations between Tanner and his counsel were on the phone. Tanner's mother explained that Tanner placed the call on speaker phone, which allowed her to hear the conversation. According to Tanner's mother, counsel first informed Tanner that the State had offered him a twenty-year sentence, with ten years suspended and five years to serve, followed by five years of probation. Tanner's counsel stated that he believed he could get Tanner a better deal if Tanner agreed to plead guilty and avoid a trial. Several weeks later, in a second conversation, Tanner's counsel told him that the State had offered another deal: fifteen years, with ten years suspended, four years to serve, and two years of post-release supervision.

¶12. Tanner's mother stated that the third conversation happened on the day of Tanner's plea hearing. According to Tanner's mother, she was standing in the hall prior to the hearing, and Tanner's counsel exited the courtroom and approached Tanner. Counsel told Tanner that he had talked with the circuit judge, and in exchange for Tanner's submitting to an open plea of guilty, the circuit judge agreed to sentence Tanner to a fifteen-year sentence, with ten years suspended and two years to serve, followed by three years of post-release supervision. After the circuit court actually sentenced Tanner to serve a twenty-year sentence, Tanner's mother stated that she overheard counsel tell Tanner that he would get Tanner's sentence corrected after Tanner served the first two years. Counsel assured Tanner that he would only

6

have to serve the two-year sentence agreed upon by the circuit judge.

¶13.    In reviewing Tanner's claims, "we first examine if the alleged erroneous advice would have rendered [his] plea involuntary." *Jackson v. State*, 178 So. 3d 807, 809-10 (¶10) (Miss. Ct. App. 2014).  Next, we "review whether [Tanner] met his burden to present sufficient evidence in support of his claim of error to warrant an evidentiary hearing." *Id*. at 810 (¶10). "A guilty plea is binding if entered voluntarily, knowingly, and intelligently." *Woods v. State*, 71 So. 3d 1241, 1244 (¶8) (Miss. Ct. App. 2011).  This standard is met if "the defendant is advised concerning the nature of the charge against him and the consequences of the plea." *Mason v. State*, 42 So. 3d 629, 632 (¶7) (Miss. Ct. App. 2010) (quoting *Alexander v. State*, 605 So. 2d 1170, 1172 (Miss. 1992)).  However, "[a]n allegation that the defendant pled guilty in response to counsel's mistaken advice may vitiate the plea, because it indicates the defendant may not have been fully aware of the consequences of the plea." *Jackson*, 178 So. 3d at 810 (¶11).  The petitioner bears the burden of proving by a preponderance of the evidence that his plea was involuntarily entered. *Woods*, 71 So. 3d at 1244 (¶8).

¶14.    In *Readus v. State*, 837 So. 2d 209, 213-14 (¶14) (Miss. Ct. App. 2003), the defendant (Readus) filed a PCR motion alleging that he pleaded guilty because his counsel advised him that he would receive a lesser sentence than the one he actually received.  In support of his claim, Readus submitted an affidavit from his mother confirming that Readus's attorney "instilled an expectation of a lighter sentence." *Id*. at 214 (¶14).  The circuit court found that

Readus's affidavit was negated by the transcript from the plea hearing and dismissed Readus's PCR motion without a hearing. *Id*. at 211 (¶6). On appeal, this Court acknowledged that "the [plea-hearing] transcript reveals a facially correct guilty plea" and that the circuit court "thoroughly questioned Readus to ascertain voluntariness, and thoroughly advised Readus about the consequences of the plea, including the maximum sentence Readus could receive on each charge." *Id*. at 213 (¶10). This Court also acknowledged that Readus's responses during the plea colloquy indicated that his plea was voluntary. *Id*. However, because Readus submitted an affidavit from his mother that supported Readus's claim that his counsel "instilled an expectation of a far more lenient sentence than Readus actually received," this Court found that Readus's PCR motion was "sufficient to withstand summary dismissal" and accordingly reversed and remanded for an evidentiary hearing. *Id*. at 214 (¶14). This Court further observed that "Readus has promptly filed the PCR motion, which is consistent with an expectation of a more lenient sentence." *Id*. at 214 (¶15).

¶15. In another similar case, *Sylvester*, 113 So. 3d at 621 (¶9), the defendant filed a PCR motion claiming that prior to entering a guilty plea, his counsel misinformed him of the consequences of his sentence. In support of his PCR claims, Sylvester provided his own affidavit, as well as an affidavit from his sister, specifically alleging that Sylvester was misinformed as to his eligibility for trusty earned time. *Id*. at 623-24 (¶20). The plea-hearing transcript showed that Sylvester was informed of the maximum and minimum sentences. *Id*.

8

at 623 (¶20). However, this Court found that because the issue of parole was not addressed during Sylvester's plea colloquy, the alleged misinformation went uncorrected. *Id*. at 624 (¶20). This Court therefore reversed and remanded Sylvester's case for an evidentiary hearing, explaining that Sylvester provided sufficient evidence to show that he was entitled to an evidentiary hearing on whether his plea was knowingly, intelligently, and voluntarily entered. *Id*.; *see also Jackson*, 178 So. 3d at 812 (¶22) (holding that where the defendant provided his own affidavit in support of his PCR motion, as well as an affidavit from his wife, stating that his counsel gave him erroneous advice about his eligibility for parole, the defendant "met the evidentiary burden required in order to obtain an evidentiary hearing").

¶16. As in *Readus* and *Sylvester*, Tanner's guilty-plea petition and the plea-hearing transcript reflect that he understood the minimum and maximum sentences for his charges. Tanner's plea petition also provides that the State intended to make the following sentencing recommendation upon Tanner's guilty plea: twenty years in the custody of the MDOC, with ten years suspended and ten to serve for his DUI conviction, and twenty years in the custody of the MDOC for his leaving-the-scene-of-an-accident conviction. However, Tanner and his mother both provided affidavits asserting that Tanner's counsel misinformed him as to the actual sentence he would receive if he pleaded guilty. Both affidavits state that Tanner's counsel represented to Tanner that the circuit judge had agreed to enter a lesser sentence than the one Tanner received. Our review of the plea-hearing transcript shows that the plea colloquy did not address or correct the issue of whether Tanner was advised that the circuit

9

judge agreed to a specific, lesser sentence if Tanner pleaded guilty. "[E]rroneous information concerning parole and sentencing at least entitles the petitioner to an evidentiary hearing on whether he relied on the erroneous information." *Fairley v. State*, 834 So. 2d 704, 707 (¶8) (Miss. 2003).

¶17. After our review, we find that Tanner presented sufficient evidence to show that he is entitled to an evidentiary hearing on whether his plea was knowingly, intelligently, and voluntarily entered.[2]

¶18. Tanner also argues that his counsel's allegedly erroneous advice resulted in the deprivation of Tanner's Sixth Amendment right to effective assistance of counsel. To prove ineffective assistance of counsel, Tanner must demonstrate: (1) his counsel's performance was deficient, and (2) this deficiency prejudiced the defense. *Strickland*, 466 U.S. at 687. There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Id*. at 689. To overcome this presumption, Tanner

---

[2] We recognize that an evidentiary hearing on a PCR motion is the proper venue for a circuit judge to "assess the credibility of [Tanner's] affidavit" through testimony. *Esco v. State*, 102 So. 3d 1209, 1214 (¶¶13-14) (Miss. Ct. App. 2012). "At the evidentiary hearing on a PCR motion, the [circuit] judge sits as the trier of fact and resolves any credibility issues." *Id*. at (¶13). During an evidentiary hearing, the circuit court "may receive proof by affidavits, depositions, oral testimony or other evidence." Miss. Code Ann. § 99-39-23(4) (Rev. 2020). As an appellate court, we must "refrain from reweighing or making witnesses-credibility assessments, since credibility determinations are within the sole province of trial judges—not appellate judges." *Culpepper v. State*, 148 So. 3d 386, 390 (¶16) (Miss. Ct. App. 2014). Rather, the relevant inquiry before this Court is whether Tanner presented sufficient evidence to show that he is entitled to an evidentiary hearing on his PCR claim.

10

"must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty, would have insisted on going to trial, and the outcome would have been different." *Walker v. State*, 271 So. 3d 789, 794 (¶14) (Miss. Ct. App. 2019).

¶19. As discussed, Tanner argues that his counsel erroneously assured him that he would receive a lesser sentence if he entered a guilty plea. Tanner maintains that if he had known the actual sentence he would receive, he would not have entered a guilty plea. Tanner confirmed during the plea hearing that he understood his possible sentences, and he affirmed his satisfaction with his attorney. However, Tanner provided his own affidavit, as well as an affidavit from his mother, stating that Tanner's counsel informed him that if he pleaded guilty, he would receive a lesser sentence than the one he actually received. In *Sylvester* and *Readus*, this Court found that the affidavits submitted by the defendants were sufficient to establish that they were entitled to an evidentiary hearing on their claims of ineffective assistance of counsel. *Sylvester*, 113 So. 3d at 624 (¶23); *Readus*, 837 So. 2d at 214 (¶18). We therefore find that Tanner submitted sufficient evidence in support of his PCR motion to warrant an evidentiary hearing in order to explore the merits of his claim of ineffective assistance of counsel.

¶20. After our review, we find that Tanner has presented sufficient evidence in support of his PCR motion entitling him to an evidentiary hearing on whether his plea was voluntary and whether he received ineffective assistance of counsel. We therefore reverse the circuit court's order and remand for an evidentiary hearing on Tanner's PCR claims.

11

¶21.   **REVERSED AND REMANDED.**

**BARNES, C.J., WESTBROOKS, McDONALD, McCARTY AND EMFINGER, JJ., CONCUR.   LAWRENCE, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY GREENLEE, J.; WILSON, P.J., JOINS IN PART.   SMITH, J., NOT PARTICIPATING.**

**LAWRENCE, J., DISSENTING:**

¶22.   I would affirm the circuit court's denial of Tanner's PCR motion because the plea transcript and the plea petition belie, wholly refute, and substantially contradict the allegations set forth in Tanner's PCR motion.   I do not believe the record in this case proves the trial court's findings were "clearly erroneous."   Further, the precedents of the appellate courts in this State allow a summary denial of a request for an evidentiary hearing when the plea petition and plea-hearing transcript "substantially contradict" the facts alleged in a PCR motion and accompanying affidavits.   *See Kirksey v. State*, 728 So. 2d 565, 568 (¶12) (Miss. 1999); *Harveston v. State*, 597 So. 2d 641, 642 (Miss. 1992); *Magyar v. State*, 18 So. 3d 851, 859 (¶28) (Miss. Ct. App. 2008); *Hoyt v. State,* 952 So. 2d 1016, 1018 (¶4) (Miss. Ct. App. 2007).   Accordingly, I respectfully dissent.

¶23.   On March 1, 2018, Tanner pled guilty under oath to the felonies of driving under the influence (DUI) causing disfigurement or death and leaving the scene of an accident.   Tanner also signed a plea petition under oath on the same day.   Tanner was ultimately sentenced to twenty-five years in custody with ten years suspended, leaving fifteen years to serve for the first conviction and twenty years to serve concurrently for the second conviction.   Upon release, Tanner would be placed on five years of post-release supervision.   Tanner filed a

12

PCR motion and attached an affidavit written by his mother. The circuit court denied Tanner's PCR motion without an evidentiary hearing. Tanner appealed the trial court's denial, arguing that the court erred in denying his PCR motion without an evidentiary hearing.

¶24. Tanner's motion and the affidavit of his mother, Carol Nixon-Griffin, detailing Tanner's plea bargaining process were virtually identical. For example, Tanner's PCR motion and Nixon-Griffin's affidavit both alleged Tanner's attorney told him that "the State offered him a plea bargain of [twenty] years, [ten] . . . suspended, [five] . . . to serve and [five] year[s] probation. . . ." They also alleged that Tanner's attorney "believed he could get Tanner a better deal if he would forgo" his trial and plead guilty. Tanner and Nixon-Griffin also alleged that a "few weeks" later, Tanner's attorney said, "[I]f [Tanner] would change his plea to guilty and not go to trial, the State would recommend a [fifteen] year term with [ten] . . . suspended, four . . . to serve, two . . . years post release supervision." Tanner and Nixon-Griffin both alleged that on the day of Tanner's plea hearing, Tanner's attorney approached him and said, "**he had talked to the judge**" and that if Tanner would enter an "open . . . plea," the judge would sentence him to a total of "[fifteen] years, [ten] . . . suspended, **[two] to serve**, [and three] years post release supervision." (Emphasis added). Finally, Tanner and Nixon-Griffin stated that when Tanner was being escorted from the courtroom, his attorney said "he would get [Tanner's] sentence corrected after he served the

two years."[3] Further, they both indicated Tanner would have to serve the two years "as agreed on by him and the judge."[4]

¶25. Although Tanner and Nixon-Griffin allege that Tanner was promised a lesser sentence than what he ultimately received, Tanner's signed plea petition and the plea colloquy, both of which were taken under oath, show that Tanner knew and understood that the trial court could sentence him to a greater sentence. Provision six of Tanner's plea petition contained the following typed language:

> I also understand that if I plead 'GUILTY,' the Court may impose the same punishment as if I had pled 'NOT GUILTY,' stood trial and been convicted.

Provision eleven of Tanner's plea petition included the following declaration, stating Tanner was not promised a lesser sentence in exchange for his guilty plea:

> [N]o officer or agent of any branch of government (Federal, State, or Local) has made any promise or suggestion of any kind to me, or within my knowledge to anyone else, that I will receive a lighter sentence, or probation, or any form of leniency if I plead 'GUILTY'. . . .

Additionally, Tanner handwrote on his plea petition the "maximum sentences" he could receive for each charge—five to twenty-five years of imprisonment and/or a fine of $0 to $10,000 and five to twenty years of imprisonment and/or a fine of $1,000 to $10,000.

¶26. Further, in provision twelve of Tanner's plea petition, the typed language

---

[3] Nixon-Griffin uses "Markey's" instead of "Tanner's" in her affidavit.

[4] It is unclear whom Tanner and Nixon-Griffin meant when they used the pronoun "him." It appears Tanner is alleging that his attorney met with the judge and made a "secret deal" that Tanner would serve two years. The term "secret" is used because nowhere on the plea petition or during plea hearing is this "deal" mentioned.

14

acknowledged that what Tanner's attorney told him about his sentence was only a "prediction" and was not binding on the court. This important language that Tanner adopted under oath reads as follows:

> I recognize that if I have been told by my lawyer that I might receive probation or a light sentence, this is merely his/her prediction and is not binding on the Court.

This language directly contradicts any misunderstanding that Tanner now alleges. In *Magyar v. State,* this Court held, "[E]ven if a defendant receives erroneous advice from defense counsel, any misunderstanding created by this advice may be corrected by the court during the voluntariness inquiry." 18 So. 3d 851, 857 (¶22) (Miss. Ct. App. 2008) (quoting *Thomas v. State*, 881 So. 2d 912, 917 (¶13) (Miss. Ct. App. 2004)). Tanner claims he was told that he would receive a more lenient sentence. However, Tanner's plea petition states that he understood his lawyer's telling him that he may receive a lesser sentence was nothing more than a "prediction" and was "not binding on the Court." This sentence in the plea petition corrected any potential misunderstanding Tanner can now claim and "substantially contradicts" the allegations in Tanner's PCR motion.

¶27. Further, at Tanner's plea hearing on March 1, 2018, the circuit court judge conducted the plea colloquy, and Tanner responded under oath to the judge's questions. Tanner testified that no one guaranteed him a specific sentence in exchange for his plea:

> By the Court: Has anyone guaranteed or promised that you would receive a specific or particular sentence or offered you anything of value in exchange for your guilty plea?

15

Tanner: No, Your Honor.

Tanner also testified that he understood he could receive the maximum sentence that the convictions carried:

> By the Court: And even though there may or may not be at the time of sentencing some type of recommendation, I could impose up to those [forty-five] years to serve?
>
> Tanner: Yes, Your Honor.

Tanner's attorney also told the court that Tanner had been informed the judge could ultimately impose "any" sentence on Tanner:

> [Tanner's Attorney]: [H]e has been instructed that obviously after coming in and entering a plea in front of Your Honor and the plea being accepted . . . Your Honor can still impose any sentence on those charges.

"There is 'a strong presumption of validity of anyone's statement under oath.'" *Loden v. State*, 43 So. 3d 365, 396 (¶59) (Miss. 2010) (quoting *Holt v. State*, 650 So. 2d 1267, 1270 (Miss. 1994)). Because Tanner signed the plea petition under oath and testified at his plea hearing that he was not promised a specific sentence in exchange for his plea and understood he could receive the maximum sentence, it is clear that Tanner understood he could receive a sentence harsher than the two years he alleged that he was promised.[5]

---

[5] The majority opinion remarks in a footnote that appellate courts are not to judge the "credibility" of witnesses. I agree. The credibility of witnesses should be determined by the trial court. That is exactly what the trial court did in this case, yet the majority reverses that determination. Further, the supreme court has instructed the appellate courts that when the allegations in the PCR motion are "substantially contradicted" and amount to a "sham," the circuit court judge's denial of a PCR motion without an evidentiary hearing should be affirmed. *See Kirksey v. State*, 728 So. 2d 565, 567 (¶9) (Miss. 1999) (quoting *Taylor v.*

¶28. I agree with the majority that *Sylvester v. State* provides guidance. In that case, the Court found that "when the movant attaches an affidavit of another who supports the allegation, the trial court **may** be required to conduct an evidentiary hearing." *Sylvester v. State*, 113 So. 3d 618, 621 (¶10) (Miss. Ct. App. 2013) (emphasis added). Additionally, *Sylvester* relies on Mississippi Code Annotated section 99-39-11(2)(Rev. 2020), which states that a circuit court can deny a PCR motion without an evidentiary hearing "if it plainly appears from the face of the motion, any annexed exhibits and the prior proceedings in the case that the movant is not entitled to any relief." *Sylvester*, at 621 (¶9). This language indicates that it is within the trial court's discretion to dismiss a PCR motion without an evidentiary hearing when the facts alleged in the PCR motion and accompanying affidavits are substantially contradicted by the record.

¶29. In *Hoyt*, this Court reviewed a circuit court's dismissal of Hoyt's PCR motion without an evidentiary hearing. *Hoyt*, 952 So. 2d at 1018 (¶4). Hoyt attached two affidavits to his PCR motion written by his mother and niece in an effort to prove that his plea was involuntary. *Id*. at 1022 (¶20). The circuit court dismissed his PCR motion without an

---

*State*, 682 So. 2d 359, 364 (Miss. 1996)); *Magyar v. State*, 18 So. 3d 851, 859 (¶29) (Miss. Ct. App. 2008); *Hoyt v. State,* 952 So. 2d 1016, 1018 (¶4) (Miss. Ct. App. 2007). To determine if the allegations of the PCR motion and affidavits are "substantially contradicted" and if a summary dismissal by the trial court should be affirmed, the appellate courts must look to the facts alleged. *See Magyar*, 18 So. 3d at 859 (¶28). We are not to second-guess the trial court's determination unless it is "clearly erroneous." How do we, as an appellate court, determine if a circuit court judge's ruling is "clearly erroneous" or if the plea petition and plea hearing "belie" or "substantially contradict" the PCR motion's allegations if we do not look to the allegations alleged by Tanner?

17

evidentiary hearing. *Id.* at 1019 (¶4). This Court affirmed the trial court's decision, finding that "[a] motion for post-conviction relief is properly dismissed without an evidentiary hearing where the defendant's claims are **directly contradicted by the transcript of the guilty plea hearing**." *Id*. at 1023 (¶23) (emphasis added). Further, this Court noted, "Both this Court and our supreme court have held, 'where an affidavit is overwhelmingly belied by unimpeachable documentary evidence in the record such as, for example, a transcript or written statements of the affiant to the contrary to the extent that the court can conclude that **the affidavit is a sham** no hearing is required.'" *Id*. at 1022 (¶22) (emphasis added) (quoting *Sandifer v. State*, 799 So. 2d 914, 917 (¶8) (Miss. Ct. App. 2001)). Ultimately, this Court found that the two affidavits Hoyt provided did support that his plea was involuntary. *Id*. at 1023 (¶23). However, the affidavits were contrary to "Hoyt's sworn statements in the transcript of the plea hearing, the waiver of indictment, and the petition to plead guilty." *Id*. For those reasons, this Court held that the trial court was within its discretion to dismiss Hoyt's PCR motion without an evidentiary hearing. *Id*. at (¶23-24).

¶30.    In *Magyar,* this Court affirmed a circuit court's decision to dismiss Magyar's PCR motion without an evidentiary hearing to determine if his counsel was ineffective. *Magyar*, 18 So. 3d at 859 (¶28). Magyar attached four affidavits[6] to his PCR motion to show his counsel was ineffective. *Id*. at 856 (¶17). The circuit court denied Magyar's PCR motion

---

[6] This Court only considered two of the affidavits in its decision because one affidavit was not attested, and the other affidavit was considered hearsay. *Magyar*, 18 So. 3d at 857 (¶¶18-19).

without an evidentiary hearing. *Id.* On appeal, Magyar argued that his attorney had encouraged him to plead guilty because Magyar would only receive a suspended sentence. *Id*. at 857 (¶22). However, this Court found that "Magyar's testimony that he understood that the trial judge could sentence him to a maximum term of thirty years in prison" contradicted Magyar's allegation. *Id.* This Court also noted that "even if a defendant receives erroneous advice from defense counsel, any misunderstanding created by this advice may be corrected by the court during the voluntariness inquiry." *Id.* (quoting *Thomas*, 881 So. 2d at 917 (¶13)). In concluding that the trial court was correct in denying Magyar an evidentiary hearing on his PCR motion, this Court noted that "not every motion for [PCR] filed in the trial court must be afforded a full adversarial hearing. A trial judge may disregard the assertions made by a [PCR] movant where . . . they are **substantially contradicted** by the court record of proceedings that led up to the entry of a judgment of guilt." *Id*. at 859 (¶28) (emphasis added) (quoting *Hebert v. State*, 864 So. 2d 1041, 1045 (¶11) (Miss. Ct. App. 2004)).

¶31.    The Mississippi Supreme Court  also places value on a petitioner's sworn testimony in plea hearings. In *Kirksey v. State*, 728 So. 2d 565 (Miss. 1999), Kirksey filed a PCR motion and attached two affidavits to his motion. *Id*. at 568 (¶12). The trial court denied Kirksey's motion without an evidentiary hearing, and the supreme court affirmed on appeal. *Id.* at 566, 568 (¶¶7, 12). The supreme court noted that "[w]here the petitioner's version is belied by previous sworn testimony . . . as to **render his affidavit a sham** we will allow

19

summary judgment to stand." *Id.* at 567 (¶9) (emphasis added) (quoting *Taylor v. State*, 682 So. 2d 359, 264 (Miss. 1996)). The court found that it was "clear from Kirksey's testimony that the affidavits to the petition [were] merely a **sham**." *Id.* (emphasis added). The only evidence Kirksey presented to show his counsel was ineffective was the two affidavits, which "directly contradict Kirksey's sworn testimony during the plea hearing." *Id.*

¶32. The Mississippi Supreme Court similarly found in *Harveston v. State*, 597 So. 2d 641 (Miss. 1992), that Harveston's PCR motion claiming ineffective assistance of counsel for failing to conduct a pretrial investigation, spend more time with him, and properly inform him that he would be sentenced as a habitual offender was without merit. *Id*. at 642. The supreme court noted that "a post-conviction collateral relief petition which meets basic pleading requirements is sufficient to mandate an evidentiary hearing unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id*. at 643 (quoting *Turner v. State*, 590 So. 2d 871, 874 (Miss. 1991)). The supreme court affirmed the trial court's decision to deny Harveston's PCR motion without an evidentiary hearing because the transcript of Harveston's plea hearing showed he was fully informed of the maximum sentence he was facing as a habitual offender, he acknowledged that no one had threatened or coerced him into pleading guilty, and he agreed that "no one wanted him to plead guilty unless he, in fact, was guilty" of the crime to which he was pleading guilty. *Id*.

¶33. Tanner is situated like the movants in *Hoyt*, *Magyar, Kirksey*, and *Harveston*:

20

Tanner's PCR motion and his mother's accompanying affidavit allege that the judge and Tanner's lawyer agreed to a deal where Tanner would serve two years in prison in exchange for his guilty plea. However, Tanner ultimately was sentenced to serve twenty years. Both Tanner and his mother allege that, after Tanner was sentenced, his lawyer told him the sentence would be corrected after he served the two years. Those allegations are wholly refuted and substantially contradicted by the plea petition Tanner signed under oath and the plea colloquy he gave under oath. As previously stated, Tanner's plea petition included the language, "I also understand that if I plead 'GUILTY,' the Court may impose the same punishment as if I had pled 'NOT GUILTY,' stood trial and been convicted." He also handwrote his understanding of the maximum sentences for each charge he was pleading guilty to. He acknowledged that "no officer or agent of any branch of government (Federal, State, or Local) has made any promise or suggestion of any kind to me, or within my knowledge to anyone else, that I will receive a lighter sentence, or probation, or any form of leniency if I plead 'GUILTY'. . . ." Most importantly, Tanner's plea petition indicated he understood that "if I have been told by my lawyer that I might receive probation or a light sentence, this is merely his/her prediction and is not binding on the Court." The transcript of Tanner's plea petition also shows that the judge questioned Tanner to ensure no one "guaranteed or promised that [Tanner] would receive a specific or particular sentence or offered [him] anything of value in exchange for [his] guilty plea." Tanner testified, under oath, that no one had made any promises or guarantees about sentencing to him. The judge

21

also asked Tanner if he understood that the judge could impose up to forty-five years to serve in prison, and Tanner responded, under oath, "Yes, Your Honor." His attorney stated on the record at the plea hearing in front of Tanner, "[H]e has been instructed that obviously after coming in and entering a plea in front of Your Honor and the plea being accepted . . . . Your Honor can still impose any sentence on those charges." Further, the court was told that this plea was an open plea, meaning no plea recommendation was going to be made. Despite this obvious pronouncement by the State, his attorney, and the court's accepting that it was an open plea at the plea hearing, Tanner alleges that there was a plea agreement in which he was to receive only two years in prison.

¶34. Tanner and his mother also assert that Tanner's attorney and the circuit court judge had a deal that the judge would only sentence Tanner to two years in prison in exchange for Tanner's guilty plea. Both Tanner and Nixon-Griffin state that Tanner's attorney **"talked"** with "the judge" on **"the day"** of Tanner's "court date," and the two agreed Tanner's sentence would be two years in prison. (Emphasis added). They alleged that when Tanner was actually sentenced to serve twenty years, Tanner was told by his attorney, after the plea hearing, that he must serve two years and then he would get the sentence **"corrected."** (Emphasis added). All of those allegations in the PCR are substantially contradicted by the plea petition and the plea hearing transcript.

¶35. Further, it is important to note that the Mississippi Rules of Criminal Procedure forbid trial judges from participating in the plea bargaining process: "The trial judge shall not

22

participate in any plea discussion." MRCrP 15.4(b); *see also Magee v. State*, 759 So. 2d 464, 470 (¶16) (Miss. Ct. App. 2000) (quoting *Fermo v. State*, 370 So. 2d 930, 933 (Miss. 1979) (stating that a trial judge "should never become involved, or participate, in the plea bargaining process")). Apparently, to believe Tanner's allegations, we have to accept that the deal to give Tanner two years between his attorney and the judge was a secret deal. It was never discussed on the record by the judge, by his attorney, or by Tanner. For some reason, Tanner never explains in his PCR motion why he gave answers at his plea hearing, under oath, that were totally contrary to the plea deal he now wants us to believe existed.[7]

¶36. Further, according to Tanner's allegations, both the trial judge and Tanner's attorney would have ignored the felony crime of perjury being committed in the courtroom by allowing Tanner to continue to testify under oath at his plea hearing, contrary to what he now alleges in his PCR motion, when, according to Tanner, they both knew of and agreed to a deal. At his plea hearing, Tanner testified that he was not offered a plea deal or a lesser sentence in exchange for his open guilty plea. Neither Tanner's attorney nor the trial judge stopped or corrected Tanner from falsely testifying, even though, according to Tanner, they had a deal that he would serve only two years.

¶37. Tanner also alleges that, after he was sentenced to serve twenty years, his attorney told him that the judge would order his placement on probation after Tanner served two years.

---

[7] The judge did not order a two-year sentence. He ordered a twenty-year sentence, which further contradicts Tanner's allegations. If the judge had agreed to order Tanner to serve a two-year sentence, then he would have simply done so.

23

However, Mississippi Code Annotated section 47-7-47(2)(a)(Rev. 2015) only allows a judge to suspend a sentence and place a defendant on "earned probation" no "later than **one . . . year** after the defendant has been delivered" into custody. Miss. Code Ann. § 47-7-47(2)(a) (emphasis added). It is simply too incredible to believe that any practicing attorney or judge would agree to a secret deal like what Tanner and his mother allege when those actions would have violated ethical obligations, the Mississippi Rules of Criminal Procedure, and, potentially, the laws of the State of Mississippi.[8] Further, the plea petition and Tanner's responses at the plea hearing prove that Tanner's allegations are a "sham," wholly refuted, and substantially contradicted.

¶38. Where allegations set forth in a PCR motion lack credibility and are substantially contradicted by the plea petition and the plea-hearing transcript, courts are not required to hold an evidentiary hearing, regardless of how many affidavits have been provided. *See*

---

[8] *See Sallie v. State*, 237 So. 3d 749, 753 (¶17) (Miss. 2018) (quoting *Creel v. State*, 944 So. 2d 891, 893-94 (¶6) (Miss. 2006) ("[O]nce a criminal case 'has been terminated and the term of court ends, a circuit court is powerless to alter or vacate its judgment."); *see also* Miss. Code Ann. § 47-7-33(1) (Rev. 2015) ("[T]he court shall not suspend the execution of a sentence of imprisonment after the defendant shall have begun to serve such sentence."); Miss. Code Ann. § 47-7-47(2)(a) (A judge cannot sentence someone to prison and later sentence them to probation more than a year after delivery into custody.); *Miss. Comm'n on Judicial Performance v. Sanders*, 708 So. 2d 866, 878 (¶66) (Miss. 1998) (finding a circuit court judge committed an ethical violation by acting "without authority or jurisdiction . . . [when] [she] suspended the sentence of a former client and later released and placed a second inmate on probation after his conviction and sentence had been affirmed by a superior court."); Miss. Code Ann. § 97-9-63 (Rev. 2020) ("Every person who shall unlawfully or corruptly procure any witness, by any means whatever, to commit wilful and corrupt perjury in any case, matter, or proceedings in or concerning which such witness shall be legally sworn and examined, shall be guilty of subornation of perjury . . . .").

*Kirksey*, 728 So. 2d at 568 (¶12); *Harveston*, 597 So. 2d at 642; *Magyar*, 18 So. 3d at 859 (¶28). A circuit court has the discretion to deny a request for an evidentiary hearing when the allegations set forth in the affidavits attached to PCR motions or close family members' affidavits are wholly refuted and disproved and substantially contradicted by the under-oath answers in the petition to plead guilty and at the plea hearing. *See Hoyt*, 952 So. 2d at 1018 (¶4). Because I would affirm the circuit court's denial of Tanner's PCR motion without an evidentiary hearing, I respectfully dissent.

**GREENLEE, J., JOINS THIS OPINION. WILSON, P.J., JOINS THIS OPINION IN PART.**